**In re Charles Alvin MOORE and Julia Mae Moore, Debtors.**

**SUN BANK/TREASURE COAST, N.A., Plaintiff,**

v.

**Charles Alvin MOORE and Julia Mae Moore, Defendants.**

**Bankruptcy No. B91–31587–BKC–RAM. Adv. No. B91–0843–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 23, 1991.

ors. The total outstanding indebtedness due under the notes and guarantees is $249,531.75. The notes and guarantees were collateralized by a third mortgage on the Debtors' real property and by a perfected security interest in all of the assets of the corporate borrower. The Debtors delivered personal and business financial statements to Sun Bank in connection with the execution of the note and guarantees. The personal financial statements in question are dated October, 1986, June, 1988, and August, 1990. The Corporate financial statements are dated March, 1986 and March, 1990. Upon default under the terms of the notes and guarantees, Sun Bank filed a multi-count lawsuit against CMA and the Debtors in the state circuit court. Among the complaint counts was a replevin count for the personal property upon which Sun Bank had a perfected security interest. The sheriff went to CMA's business location and to the Debtors' personal residence but could find no collateral of Sun Bank at either location and returned the replevin writ unserved. (See, Bilateral Pretrial Stipulation).

Bertram A. Sapurstein, Miami, Fla., for plaintiff.

James Conway, Stuart, Fla., for defendant.

## MEMORANDUM OF OPINION AND ORDER [1]

RANDOLPH BAXTER, Bankruptcy Judge.

In this adversary proceeding the complainant, Sun Bank/Treasure Coast, N.A. (Sun Bank) seeks to have the Court determine the dischargeability of a debt owed by Charles Alvin Moore and Julia Mae Moore (Debtors). Following a trial on the matter, the foregoing constitutes the Court's findings and conclusions wherein the debt owed to Sun Bank is determined to be nondischargeable.

The pertinent facts are not in dispute. Sun Bank and the Debtors have stipulated that the Debtors guaranteed a series of promissory notes which were made and executed by Charles Moore and Associates, Inc. (CMA). CMA was wholly owned, operated and controlled by the defendant Debt-

In support of its complaint allegations, Sun Bank contends that the subject debt is nondischargeable as (1) the Debtors, by executing the guarantees and notes represented that the pertinent collateral would be turned over to Sun Bank in the event of a default. The default occurred and no turnover was made; (2) Debtors unlawfully converted the Bank's collateral to their own use and disposed of assets of CMA which were subject to the Bank's security interest; (3) Debtors willfully and maliciously disposed of the subject collateral with the specific intent of injuring and defrauding Sun Bank; (4) Debtors specifically intended to defraud Sun Bank by executing the loan documents and receiving loan proceeds as officers and management of CMA; (5) Debtors prepared and submitted personal and corporate financial statements which contained false representations of material facts concerning their own financial condition and that of CMA, which overstated their personal income and CMA's. Such

1. Judge Randolph Baxter, U.S. Bankruptcy Judge, N.D., Ohio, sitting by designation.

representations further grossly overvalued their assets and the assets of CMA, while failing to list many liabilities; and (6) The Debtors' conduct was willful, fraudulent and caused the Bank to lose valuable assets.

Contrary to Sun Bank's assertions, the Debtors contend they perpetuated no fraud upon the Bank and that funds paid by them as officers of CMA were used to pay ordinary business expenses inclusive of payments to contractors, rent, salaries, etc. They further contend that they converted none of the Bank's collateral to their personal use. The Debtors further deny any overstating of their income or underestimating liabilities respecting documentation provided to the Bank. The Debtors assert that Sun Bank did not rely on their financial statements for an exact amount of outstanding liabilities. The corporate financial statements are correct as and when prepared and do not contain false information. As for reliance, they assert that Sun Bank relied on the strength of CMA's utility contracts to repay the subject loans and not upon their personal financial statements. Finally, the Debtors contend that, for over five years, they had a good payment record with the Bank.

In its assertion that the loan debt is nondischargeable, Sun Bank relies upon the provisions of Section 523(a)(2)(A) and (B) and (a)(6) of the Bankruptcy Code. [11 U.S.C. § 523(a)(2)(A) and (B), (a)(6) ]. In relevant part § 523 provides that a discharge under § 1141 does not discharge an individual debtor from any debt—

§ 523(a)(2):

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. [11 U.S.C. 523(a)(2)(A) ].

Section 1141 also does not relieve an individual debtor on any debt to the extent that a written statement was used which was materially false regarding a debtor's or insider's financial condition, was reason-ably relied upon, and was published with an intent to deceive. (See, 11 U.S.C. § 523(a)(2)(B)).

As a third approach to achieve nondischargeability of the Bank's debt, Sun Bank alleges that the provisions of § 523(a)(6) are applicable. Subsection (a)(6) precludes a discharge from being obtained under § 1141 where the debtor's conduct caused willful and malicious injury to another entity or to the property of such entity. [11 U.S.C. § 523(a)(6) ].

The phrase "willful and malicious injury" covers a willful and malicious conversion. See, 124 Cong.Rec.H. 11113, H. 11114 (Sept. 28, 1978). An act is willful if it is deliberate and intentional. The reckless disregard of one's duty is insufficient to prove willfulness. See, Chrysler Credit Corp. v. Rebhan, 842 F.2d 1257 (11th Cir. 1988); In re Latch, 820 F.2d 1163 (11th Cir.1981). "Malicious" defines an act that is wrongful and without just cause. Said act does not have to be done with personal hatred or ill will. In re Ikner, 883 F.2d 986, 991 (11th Cir.1989). The requisite malice can be proven by a finding of implied or constructive malice. Chrysler Credit Corp. v. Rebhan, supra; In re Ikner, supra.

The creditor seeking to except a debt from discharge must prove the willfulness and maliciousness of the act which gave rise to the debt. See, In re Ikner, supra; Chrysler Credit Corp. v. Rebhan, supra. The language of Section 523 of the Bankruptcy Code does not dictate the standard of proof to be applied in dischargeability actions, however, the Supreme Court has ruled that a preponderance of the evidence standard is to be applied in cases under 523(a). Grogan v. Garner, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1990).

Firstly, nondischargeability of the subject debt will be examined in view of the requirements of § 523(a)(2)(A) and (B), as discussed above. When CMA was operational, its landlord was Baird Tewsberry. In his testimony, contrary to Sun Bank's assertion, both office furniture and equipment were left on CMA's leased premises

when it ceased business on April 22, 1991. Some of the personalty left on the premises included leased office equipment which was recovered by the lessors. His testimony was credible and clearly indicated that he does not know the exact items left by the Debtors, as he took no inventory upon CMA's vacation of the premises. He sold CMA's copy machine and scrapped the word processor. CMA's staff and management promptly and voluntarily left the premises when requested to do so. In fact, Tewsberry testified that the Debtor CMA was an excellent tenant until it encountered financial problems. (Tewsberry, Direct Exam.) He further testified that he did not believe that CMA's management took any office furnishings upon vacating the premises, although he was not certain as no inventory was taken. There was no evidence, according to Tewsberry, to indicate that CMA's management returned to the premises after it was vacated by CMA.

Testimony of Brian Martin of Sun Bank revealed that he did not recall which assets were converted to the Debtor's personal use, and he had no specific evidence that the Debtors converted any office furniture and equipment to their use. Regarding the annual salary of Debtor Charles A. Moore, Martin testified that he could not say that the reported $111,000.00 annual salary figure was incorrect. Thusly, there is no evidence that the Debtor Charles Moore overstated his income. Moreover, Martin's testimony further served to defeat Sun Bank's allegation that the Debtors had overstated the value of CMA's assets. Specifically, he stated that he did not require the Debtors to obtain a professional consultant to value CMA's assets at any time. In fact, it was his practice to leave that matter to the borrowers, as he was unaccustomed to telling borrowers how to run their businesses. (Martin, Cross Exam.)

Of particular significance was Martin's testimony regarding the Bank's formal demand for payment and Sun Bank's past relationship with the Debtors on behalf of CMA. He testified that CMA's note payments, historically, were tardy rather than timely. Even with the trend of tardy payments, the Bank issued only one formal demand for payment during the course of its business relationship with CMA. Martin's testimony characterized the Bank's posture towards the Debtors and CMA as a posture of "acquiescence", due to the positive manner in which the Debtors had handled themselves in the past.

The testimony of co-debtor Charles A. Moore was credible, generally, with regard to his dealings with Sun Bank. Undisputedly, he testified that he frequently gave Sun Bank the status reports on CMA and its marketing efforts. Further, Sun Bank required monthly accounts receivable reports of CMA which were provided until December of 1990. Further, the testimony of Charles Moore was uncontroverted by sufficient evidence regarding his consumer debt reported on the personal financial statement compared to that which was reported on the petition schedules. Unrefuted, he testified that both amounts were accurate at the point in time they were submitted.

When viewed totally, the Bank has failed to sufficiently prove the requirements of § 523(a)(2). In this regard, Sun Bank's complaint allegations are without merit and have not been established by the required burden of proof.

■ Next, dischargeability of the Bank's claim is considered in view of the standards under § 523(a)(6), as alleged. It is undisputed that both co-debtors executed on the note and guaranties regarding the subject loan. The testimony of both Debtors is clear to reflect that both understood that the Bank had a lien on the office furniture and equipment of CMA, in addition to its accounts receivable. Sun Bank was last paid on the note in January 1991. The testimony of both Debtors revealed that CMA receivables, secured by Sun Bank's lien, were used to pay salaries and bonuses to themselves, payment on unsecured loans made by them to CMA, in addition to utilities, insurance, leases and payroll. Effectively, they paid unsecured creditors of CMA while neglecting to pay Sun Bank, the secured creditor. This conduct was both deliberate and intentionally

made by the Debtors. Charles Moore testified that in late 1990 CMA's business activity was insufficient to cover his personal debt. He borrowed to pay personal living expenses and, contrary to the Debtors' assertions, the evidence clearly indicates that CMA revenues were used by them to pay certain of their personal living expenses. Significantly, he testified that he paid personal and other unsecured debt with CMA's receivables when he knew that the receivables were the Bank's collateral. He had no authority from the Bank to use the Bank's proceeds. In explaining this conduct, Charles Moore stated that he tried to balance the use of the accounts receivable the best he could, including his personal expenses. Such conduct is not well-founded and is clearly proscribed under § 523(a)(6).

Upon vacating the leased premises which housed CMA's operation, the evidence reveals that neither co-debtor informed Sun Bank of that vacation to allow the Bank to recover its collateral on site. That conduct certainly displayed a gross and reckless disregard for the collateral securing the Bank's lien. As a result of a replevin action filed by the Bank, it recovered only $9,800.00 of the receivables.

Accordingly, under § 523(a)(6), the subject debt is nondischargeable for the aforementioned reasons. The Plaintiff, Sun Bank, has sufficiently met its burden by a preponderance of the evidence to show that the Debtors' conduct towards its collateral caused it to sustain willful and malicious injury.

Accordingly, judgment is hereby entered in favor of the Plaintiff, Sun Bank, and the subject debt is nondischargeable pursuant to provisions of § 523(a)(6). (*See, Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988); *Ford Motor Credit v. Owens*, 807 F.2d 1556 (11th Cir.1987); and *In re James*, 124 B.R. 614 (Bankr.M.D.Fla. 1991).

IT IS SO ORDERED.