In re Karen Perdue COLTRANE,
Debtor.

Oakwood Acceptance Corporation,
Plaintiff,

v.

Karen Perdue Coltrane, Defendant.

No. CIV.A. 00–09566–W.
Adversary No. 01–80018–W.

United States Bankruptcy Court,
D. South Carolina.

May 11, 2001.

Jan M. Baker, King and Dalrymple, PA, West Columbia, SC, for Debtor.

Ralph C. McCullough, II, Columbia, SC, trustee.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon a hearing held on April 24, 2000 to determine the amount of Judgment in the above-referenced adversary proceeding. After considering the evidence presented at the hearing, the Court makes the following Findings of Fact and Conclusions of Law:[1]

## FINDINGS OF FACT

1. Karen Perdue Coltrane ("Defendant" or "Debtor") filed for relief under Chapter 7 of the Bankruptcy Code on October 24, 2000.

2. Oakwood Acceptance Corporation ("Plaintiff" or "OAC") is a creditor of Debtor by virtue of a Retail Installment Contract for the purchase of a 1996 Oakwood Mobile Home, Serial Number HONC02231147A and B entered into by Debtor on or about March 28, 1996, which was later assigned to Plaintiff. Plaintiff

---

**1.** The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such; and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

presently has a perfected security interest in the mobile home; including its fixtures, appliances, and accessories.

3. Debtor failed to make payments on the mobile home and, as a result, Plaintiff filed a suit in Horry County to claim and deliver the mobile home, captioned *Oakwood Acceptance Corporation, Plaintiff v. Karen P. Coltrane, f/d/a Karen Lynn Perdue,* 2000–CP–26–2547.

4. Subsequent to service of the Summons and Complaint on Debtor of the claim and delivery action, OAC's representatives inspected the mobile home in July of 2000 and discovered that it was being stripped of its furniture, appliances, equipment, and accessories; including but not limited to the bathtub, stove, refrigerator, and air conditioning system.[2] The value of the mobile home was significantly diminished due to the stripping of its furniture, appliances, and accessories, all of which were subject to OAC's perfected security interest.

5. On August 4, 2000, Plaintiff obtained an Order for Claim and Delivery, Temporary Restraining Order and Rule to Show cause restraining Debtor, as well as her agents or third parties acting on her behalf, from removing any fixtures, appliances, or accessories from or otherwise diminishing the value of the mobile home.

6. On January 29, 2001, OAC filed this adversary proceeding to declare all or a portion of the debt owed by Debtor to OAC nondischargeable under 11 U.S.C. § 523(a)(6).

7. Debtor failed to plead or appear in this matter, and the Court entered a default on March 8, 2001, in accordance with Fed. R. Bankr.P. 7055.[3] After the entry of default, the damage hearing which is the subject of this Order was noticed to all parties in interest. Counsel for Plaintiff was present at the damages hearing; however, Debtor failed to appear to defend the default judgment.

8. As of April 20, 2001, the payoff on the account is $67,732.98.

9. The damage to the mobile home occurred in approximately July of 2000 and caused a substantial decrease in value to the home. In fact, the fair market value of the mobile home after it sustained the damage described above was in the approximate amount of $45,000. If the mobile home had not been damaged, it would have had a fair market value of $60,000 in July of 2000.

10. It cost OAC $10,606.95 to repair the damage to the mobile home.

11. Presently, the mobile home has been lawfully repossessed by OAC and is being held for sale.

## CONCLUSIONS OF LAW

Section 523(a)(6) of Title 11 provides that a discharge under 11 U.S.C. § 727 does not discharge an individual from a debt "for willful and malicious injury by the debtor to another entity or to the proper of another entity." 11 U.S.C.

---

2. At the hearing, Robbie Parrish, Repossession Operations Manager for OAC, testified based on personal inspection of the home and photographs of the mobile home that he took during July 2000. The photographs, which were received into evidence, show that items including shutters, cabinet doors, tile around and above the counters, light fixtures, stereo system, knobs and drawers, lavatories and part of vanities, commode, closet doors, mantle, HVAC registers, doors and storm windows were also removed from the mobile home.

3. Debtor's counsel filed a Motion to Withdraw as Counsel in this matter on February 5, 2001, which was properly served and was heard and granted at a hearing on February 27, 2001, after notice to interested parties.

§ 523(a)(6). The conversion of property subject to a perfected security interest constitutes willful and malicious injury to property under 11 U.S.C. § 523(a)(6). 4 *Collier on Bankruptcy* ¶ 523.12 (15th Ed.1999); *see also First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664, 668 (4th Cir.1995) (finding that conversion was wrongful as to come within discharge exception for willful and malicious injury); *Sun Bank/ Treasure Coast v. Moore (In re Moore)*, 136 B.R. 570, 572 (Bankr.S.D.Fla. 1991) ("The phrase 'willful and malicious injury' covers a willful and malicious conversion."); *Anderson v. Kerr (In re Kerr)*, C/A No. 93–76251–W; Adv. Pro. 94–8068 (Bankr.D.S.C.1/17/1995) (citing *St. Paul Fire & Marine Ins. v. Vaughn*, 779 F.2d 1003 (4th Cir.1985)) ("[C]onversion can be a willful and malicious injury to the property of another."). In this case, Debtor failed to respond to OAC's Complaint and a default was entered. Thus, the only issue before the Court is the extent of damages to be awarded to Plaintiff.

■ In determining damages for willful and malicious injury to personal property subject to a perfected security interest, courts have used different criteria in determining the amount of the nondischargeable obligation. Some courts hold the outstanding balance of the loan to be nondischargeable. *See, e.g. In re Moore*, 136 B.R. at 573 (citing *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir. 1988)); *see also National City Bank v. Imbody (In re Imbody)*, 104 B.R. 830, 838–39 (Bankr.N.D.Ohio 1989). On the other hand, other courts have granted creditors nondischargeable judgments for the fair market value of the collateral at the time of the conversion. *See, e.g.*

*Friendly Finance Serv. Mid–City, Inc. v. Modicue (In re Modicue)*, 926 F.2d 452 (5th Cir.1991) (concluding that the fair market value of boat at the time of conversion was nondischargeable); *Fidelity Financial Servs. v. Cox (In re Cox)*, 243 B.R. 713, 720 (Bankr.N.D.Ill.2000); *Sears, Roebuck & Co. v. Dibben (In re Dibben)*, 139 B.R. 23, 24 (Bankr.D.Idaho 1992) (citing *In re Penney*, 76 B.R. 160, 162 (Bankr.N.D.Cal.1987)) ("When a debt is declared nondischargeable, the amount of the nondischargeable debt is determined by the fair market value of the collateral at the time of conversion.").

As the court in *In re Modicue* noted, "the appropriate measure for non-dischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis." *Id.* at 453. In this case, the Court finds that the fair market value of the collateral at the time of the conversion is the appropriate award of nondischargeable damages. Based on the testimony offered by Mr. Parrish at the hearing, the Court finds that the fair market value of the collateral at the time of the conversion was $60,000.00. However, OAC has incurred $10,606.95 in repair costs to restore the collateral so that it could be offered for sale. In order to prevent OAC from receiving a windfall, the Court holds that the damage award in the amount of $60,000 should be reduced by any amount that OAC realizes from the sale of the mobile home, less the cost expended to restore it.[4]

Based on the arguments set forth above, it is therefore;

ORDERED that Oakwood Acceptance Corporation has a nondischargeable judg-

---

**4.** The $10,606.95 in repair costs should be first reduced from the sale proceeds of the mobile home and the difference between that amount and the $60,000.00, representing the collateral's fair market value at the time of conversion, should be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

ment against Karen Perdue Coltrane pursuant to 11 U.S.C. § 523(a)(6) in the amount of $60,000. Said judgment is subject to reduction in the amount of any proceeds received from the sale of the mobile home, less $10,606.95 in repair costs incurred to restore the collateral.

**AND IT IS SO ORDERED.**