In re John W. THOMAS, Debtor.

**DEERE CREDIT SERVICES,
INC., Plaintiff,**

v.

**John W. THOMAS, Defendant.**

**Bankruptcy No. 89–6355–9P7.
Adv. No. 89–680.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

June 13, 1990.

Patrick A. Barry, Miami, Fla., for plaintiff.

Alfred E. Johnson, Fort Myers, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the Complaint filed by the Deere Credit Services, Inc. (Deere) objecting to dischargeability of a debt. Deere alleges in its complaint that the debt owed by John W. Thomas (the Debtor) to Deere in the amount of $5,234.80 should be excepted from the overall protection of the general discharge pursuant to § 523(a)(6) of the Bankruptcy Code.

The facts established at the Final Evidentiary Hearing, which are relevant to the disposition of Deere's claim of nondischargeability, are as follows:

In November, 1987, John Deere, Deere's predecessor in interest, sold a tractor to the Debtor on credit. John Deere financed the transaction, and to secure the payment of the balance due on the purchase price, John Deere obtained and duly perfected a security interest in the tractor.

It is undisputed that the Debtor sold the tractor at a yard sale in Ohio in October, 1988 without Deere's permission, and that as of November, 1988, Deere's record showed that the Debtor still had an outstanding balance of $5,234.80 on the purchase contract. According to Deere, the Debtor never paid this money and the balance is still due and owing by the Debtor. Based on the foregoing, Deere asserts that the Debtor "willfully and maliciously converted" its collateral, and therefore, the Debtor's debt to Deere should be excepted from the overall protection of the general discharge pursuant to § 523(a)(6).

According to the Debtor, after he sold the tractor for $5,500.00, he called Deere to inquire about his account balance and was directed to a representative in the payoff department. The representative allegedly informed the Debtor that his balance on the tractor contract was $5,120.00.

Shortly after the yard sale, the Debtor left Ohio one evening with $7,000 cash, and

claims to have purchased money orders the following morning at a bank in Kentucky. According to the Debtor, one of the money orders was to be used to pay the balance owed to Deere. The Debtor claims that he mailed the money orders to some of his creditors, including Deere. The Debtor failed to produce any duplicate copies of the money order sent to Deere, and he does not remember the name of the bank or the name of the city where he allegedly purchased and mailed the money order to Deere. As noted, Deere has no record of ever receiving this money order allegedly sent to it by the Debtor.

In January 1989, Deere contacted the Debtor at his home in Ft. Myers regarding the outstanding balance on the tractor contract. The Debtor informed Deere that he had paid the balance in full. The Debtor's former roommate also talked to a Deere representative two or three times, and she told the representative that the Debtor had paid Deere in full. The Debtor's roommate was unable to recall the name of the Deere representative with whom she spoke. The representative allegedly told her that Deere had received an unspecified amount of money, but that Deere was unable to identify the account to which the payment should be credited. When she told the representative the approximate amount that the Debtor paid to Deere, the representative replied that the amount was close to the amount Deere had received and was to credit to an unknown account. The Deere representative then concluded that the money should be credited towards the Debtor's balance, and he acknowledged that the Debtor's balance was paid in full.

■ These are the basic facts which, according to Deere, are sufficient to find that the debt claimed to be owed by the Debtor to Deere should be excepted from the protective provisions of the general bankruptcy discharge pursuant to § 523(a)(6) of the Bankruptcy Code. It should be noted at the outset that the underlying purpose of the Bankruptcy Code is to give the Debtor a new opportunity in life and clear field for future efforts, unhampered by pressures of existing debt. *Lines*

*v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1934). The discharge provisions of the Bankruptcy Code were designed to give the Debtor a fresh start, free from obligations associated with previous business misfortunes. Therefore, exceptions to discharge are construed strictly against the creditor, and liberally in favor of the Debtor. Furthermore, the creditor must prove his case by clear and convincing evidence. *In the Matter of Bonanza Import and Export,* 43 B.R. 577 (Bankr.S. D.Fla.1988); *In re Garner,* 881 F.2d 579 (8th Cir.1989).

As noted earlier, Deere's claim of non-dischargeability is based on Section 523(a)(6) of the Bankruptcy Code which provides:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Under this Section, the Plaintiff must establish by clear and convincing evidence a willful, malicious injury to another entity or to the property of another entity.

■ The mere failure to pay over to a creditor money received from the sale of secured property is not necessarily a willful and malicious conversion. *In re Cline,* 52 B.R. 301 (Bankr.W.D.Ky.1985); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). This leaves for consideration the alternative ground for excepting a debt from discharge under § 523(a)(6): a willful malicious injury to the property of another.

■ It is true that the tractor in question was not Deere's property; rather, the tractor was Deere's collateral which was to secure the unpaid balance on the tractor contract. It is now recognized that the unauthorized sale of collateral may form the basis of a valid claim of nondischargeability under Section 523(a)(6) of the Bankruptcy Code, provided that the sale effectively destroyed the security interest and that it was done willfully and maliciously. *In re Langer,* 12 B.R. 957 (Bankr.D.N.D. 1981).

An act is "willful" if it is deliberate or intentional, and it is malicious if it is done willfully, wrongfully, and without just cause or excuse, and it produces injury. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319. *In re Greer*, 21 B.R. 763 (Bankr.D.Ariz.1982). This Court is satisfied that a creditor is not required to prove that a Debtor's motive was to harm the creditor or his interest in property in order for the Debtor's action to be considered "willful and malicious." *Communications Workers of America v. Akridge*, 89 B.R. 66 (9th Cir. BAP 1988). Thus, the Debtor's intentional, unauthorized sale of Deere's collateral that produced harm and that was done without just cause or excuse may be characterized as "willful and malicious," notwithstanding the fact that there may be no proof that the Debtor had a specific intent to injure the creditor. *In re Cecchini*, 772 F.2d 1493, 1496 (9th Cir. 1985).

A Debtor who sells a creditor's collateral without authorization cannot claim innocence and lack of willfulness and malice when the Debtor knows that the contract expressly prohibited the sale of the collateral without the permission of the secured party and without satisfying the outstanding balance, and when the Debtor knows or should have known that the sale would effectively destroy the creditor's security interest. This Court is satisfied that the Debtor in this case willfully and maliciously disposed of Deere's collateral. Therefore, the Debtor's debt to Deere must be excepted from the overall protection of the general discharge of the Bankruptcy Code.

This Court expressly rejects the Debtor's claim that he paid the balance on the contract by purchasing and mailing a money order to Deere. Moreover, this Court finds it difficult, if not impossible, to believe that an organization like Deere failed to credit a customer's payment to his account and could not identify funds received. This Court does not believe that a Deere representative told the Debtor's friend that Deere had some money unaccounted for which they would credit to the Debtor's account since the amount of money unaccounted for "approximately" matched the amount purportedly paid by the Debtor.

This Court is satisfied that the Plaintiff established with the requisite degree of proof that the Debtor was aware that the tractor was encumbered, that he had no right to sell the tractor without paying off the balance on the contract, and that the sale would effectively destroy Deere's security interest. In sum, this Court is satisfied that the sale of the tractor by the Debtor constituted a willful and malicious injury to Deere's security interest. This Court expressly rejects the Debtor's claim of payment as utterly unbelievable. Therefore, the Debtor's debt to Deere is non-dischargeable under § 523(a)(6) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.