In re Jim M. JAMES, Anne B. James, Debtors.

**TRANSAMERICA COMMERCIAL FINANCE CORPORATION, Plaintiff,**

v.

**Jim M. JAMES and Anne B. James, Defendants.**

**Bankruptcy No. 90–172–BKC–3P7. Adv. No. 90–103.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 5, 1991.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding seeking to determine the dischargeability of a debt came before the Court for a trial on January 16, 1991, and upon the evidence presented, the Court enters the following findings of fact and conclusions of law:

### Findings of Fact

1. From 1985 until the petition date (January 18, 1990), defendant, Jim M. James, owned and operated a small boat sales business under the name of Mid–Florida Marine.

2. Defendant, Anne B. James, is the wife of defendant, Jim M. James. She was the bookkeeper for Mid–Florida Marine. Her duties included (i) making journal entries in the daily ledger, (ii) depositing funds in the operating account, (iii) paying bills and (iv) writing checks.

3. On August 14, 1989, Mid–Florida Marine entered into a floor plan financing arrangement with plaintiff. Specifically, Mr. James executed and delivered to plaintiff an inventory security agreement (the "Inventory Security Agreement"). Under this agreement, (i) plaintiff agreed to advance floor plan financing to Mid–Florida Marine, and (ii) Mid–Florida Marine agreed to (a) pay to plaintiff the amount due on each item of inventory financed immediately upon the sale of that item and (b) hold the sales proceeds until paid in trust separate and apart from Mid–Florida Marine's funds and goods.[1] In addition, Mid–Florida Marine granted plaintiff a security interest in, among other things, the inventory financed and the sales proceeds from the inventory.

4. On August 14, 1989, defendants executed and delivered to plaintiff a personal

Raymond R. Magley, Jacksonville, Fla., for plaintiff.

Albert H. Mickler, Jacksonville, Fla., for defendants.

---

1. The Inventory Security Agreement provides that plaintiff "in its sole discretion" may authorize Mid–Florida Marine to pay on a "scheduled payment program." However, the evidence demonstrated that plaintiff never authorized Mid–Florida Marine to make payments on a "scheduled payment program."

guaranty by which each guaranteed all payments due plaintiff under the Inventory Security Agreement.

5. During November and December, 1989, Mid–Florida Marine sold six boats financed by plaintiff and failed to pay plaintiff. Accordingly, these six boats were sold "out of trust." The total principal sum due plaintiff for these boats is $40,582.

6. The defendants knew that Mid–Florida Marine was required to use the sales proceeds from these six boats to pay plaintiff. Plaintiff was never paid. Mrs. James testified that she wrote five checks in the total amount of $35,475.80 payable to plaintiff for five of the six boats sold "out of trust." Mrs. James further testified that these checks were not sent to plaintiff because of "lack of money."

7. The defendants, without plaintiff's knowledge or permission, deposited the proceeds from the sale of these six boats in Mid–Florida Marine's general operating account for use in paying the other business expenses of Mid–Florida Marine and their own personal expenses.[2]

### Conclusions of Law

1. Pursuant to § 523(a)(6) of the Bankruptcy Code, a discharge under § 727 does not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

2. An act is "willful and malicious" if it is done intentionally and with knowledge that it would harm a creditor. Constructive or implied malice is enough to satisfy the malice requirement under § 523(a)(6). See, Chrysler Credit Corp. v. Rebhan, 842 F.2d 1257, 1262–63 (11th Cir. 1988); United Bank of Southgate v. Nelson, 35 B.R. 766 (N.D.Ill.W.D.1983).

3. A debtor's disposal of collateral without the lienholder's permission or knowledge is a "willful and malicious injury" giving rise to an exception to discharge

under § 523(a)(6). In re Ogden, 119 B.R. 277 (Bankr.M.D.Fla.1990); In re Mills, 111 B.R. 186, 203 (Bankr.N.D.Ind.1988).

4. A debtor participating in the conversion of proceeds from the sale of inventory financed under a floor plan financing arrangement is liable to the creditor for the proceeds converted and such debt is nondischargeable under § 523(a)(6). See, Chrysler Credit Corp. v. Rebhan, supra; Ford Motor Credit Co. v. Owens, 807 F.2d 1556 (11th Cir.1987).

5. Applying this law to the instant case, the defendants converted the proceeds from the sale of the boats sold "out of trust" and the resulting debt is nondischargeable under § 523(a)(6).

6. Specifically, Mr. James owned Mid–Florida Marine and was responsible for its daily operations. Mrs. James was the bookkeeper. Both knew that Mid–Florida Marine had sold boats which were financed by plaintiff "out of trust." In fact, Mrs. James wrote five checks to plaintiff in payment of five of the six boats which were sold "out of trust." She testified that these checks were not sent because of "lack of money."

7. The defendants admitted that the proceeds from the sale of these boats were deposited in Mid–Florida Marine's operating account to pay business and personal expenses. Less than two months prior to the petition date, the defendants, knowing that Mid–Florida Marine was in serious financial condition, withdrew in excess of $11,000 from the operating account for personal use. This conduct further demonstrates that the defendants acted "willfully and maliciously" under § 523(a)(6). See, Chrysler Credit Corp. v. Rebhan, 842 F.2d at 1260; In re Higginbotham, 117 B.R. 211, 216 (Bankr.E.D.Va.1990).

8. The measure of damages in an action for conversion under Florida law is the fair market value of the property converted, together with interest at the legal

---

**2.** Defendants were not paid a regular salary from Mid–Florida Marine but rather took periodic withdrawals from the operating account. In December, 1989, and January, 1990 (less than

two months prior to the petition date), Mrs. James testified that she withdrew in excess of $11,000 from Mid–Florida Marine's operating account for personal use.

rate from the date of the conversion to the date of the judgment.[3] *Exxon Corp. v. Ward*, 438 So.2d 1059 (Fla. 4th DCA 1983); *Bergen Brunswig Corp. v. State of Florida, Dept. of Health and Rehabilitative Services*, 415 So.2d 765 (Fla. 1st DCA 1982); *Sargent v. Midlantic National Bank*, 358 So.2d 855 (Fla. 2d DCA 1978).

9. Accordingly, the defendants are liable to plaintiff in the amount of $40,582, together with prejudgment interest at the statutory rate of 12 percent per annum. This debt is nondischargeable as to both defendants under § 523(a)(6).

10. A final judgment will be entered in accordance with these findings of fact and conclusions of law.

Bart Houston, Fort Lauderdale, Fla., for debtor.

Billie Tarnove Morrison, Fort Lauderdale, Fla., for creditor.

---

**3.** In this case, the proceeds were converted on the date (January 3, 1990) payment was due on the boats "sold out of trust."