**In re Ralph L. TRIGGIANO, a/k/a Luccio Triggiano, Debtor.**

**Bill CLADAKIS & Road King, Inc. f/k/a S.G.G., Inc. d/b/a Percy's Auto, Plaintiff,**

**v.**

**Ralph L. TRIGGIANO, a/k/a Luccio Triggiano, Defendant.**

**Bankruptcy No. 90–8391–8P7.
Adv. No. 90–665.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 9, 1991.

John A. Shahan, Tarpon Springs, Fla., for plaintiff.

James M. Timonere, Tarpon Springs, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Complaint filed by Bill Cladakis (Cladakis) and Road King, Inc., (Road King) f/k/a S.G.G., Inc. d/b/a/ Percy's Auto, against the Debtor, Ralph L. Triggiano (Debtor). The one-count Complaint, which was never challenged by a Motion to Dismiss for failure to state a claim, alleges that debts owing to the Plaintiffs by the Debtor "should be nondischargeable as obtained through theft, embezzlement, false pretenses and through false representation and through actual fraud, all within the meaning of 11 U.S.C. Section 523(a)(A) and Section 523(a)(4) and 523(a) and due to fraudulent conveyances in violation of the Bankruptcy Act." (sic). The prayer for relief requests "that this Court determine the dischargeability of the obligations, declare them to be excepted from the discharge and determine the extent of fraudulent conveyances of property lawfully due Plaintiffs." (sic). Although not clearly articulated, it appears the Plaintiffs seek a determination that certain debts, which are not described in the Complaint, should be determined to be nondischargeable by virtue of 11 U.S.C. § 523(a)(2)(A), and (a)(4) and (a)(6).

Although the Complaint intimates, albeit very poorly, that somehow the claim of nondischargeability of a debt allegedly owed by the Debtor should be declared nondischargeable in favor of Road King, the body of the Complaint fails to allege specific facts which would establish a viable claim in favor of the corporation and most importantly, the record is totally devoid of any evidence that this Debtor is indebted in any amount to the corporation, albeit there is some evidence of some loans which might have created a liability but that is a far cry from establishing that this liability should be excepted from the overall protected provisions of the general bankruptcy discharge. For these reasons, the balance of this discussion will be limited to the Debtor's liability, if any, to the Plaintiff, Cladakis.

The Court has considered the record and finds the facts relevant to a resolution of this matter, as established at the final evidentiary hearing, to be as follows:

At the time relevant, the Debtor and Cladakis each owned 50% of the shares of stock of Road King, a Florida corporation formed in October, 1989 to engage in the business of repairing automobiles. The record reveals that the Debtor was not an officer of Road King. Road King operated its business at two locations: one in Tampa, that did business under the name of "East Tampa Auto," and the second in Tarpon Springs, that operated under the name "Percy's Auto." Cladakis was employed by Road King as the general manager of the Tampa location, while the Debtor was employed as the general manager of the Tarpon Springs location. It is undisputed that as general managers, both the Debtor and Cladakis were to receive salaries of $350.00 per week.

The business operations of Road King were less than meticulous and less than business-like. For example, it is undisputed that both Cladakis and the Debtor repeatedly cashed checks made payable to Road King at local bars. The proceeds from these checks were used by the Debtor and Cladakis to make payroll, to satisfy bad checks written by them, and to cover operating expenses. The record does not reveal whether the Debtor ever kept any of the proceeds from the Road King checks for himself.

It is further undisputed that the Debtor sometimes received cash from Road King's petty cash fund, as evidenced by numerous petty cash slips. (Plaintiff's Exhs. 8, 11 and 13.) This cash, obtained from petty cash, was used in part to satisfy outstanding bad checks of Road King and in part to meet corporate expenses. It should be noted that some of the petty cash slips indi-

cate that the cash received represented a "commission" or was an "advance" or "loan" to the Debtor. The record does not reveal whether these loans were ever repaid or whether the loans, advances and commissions were authorized. Further, although Road King made certain payments to the Debtor, the record does not reveal the purpose of these payments. (Plaintiff's Exhs. 13 and 20.) Moreover, the record reveals that Road King periodically performed repair services and arranged for towing for members of the Debtor's family, as shown by several work orders. (Plaintiff's Exhs. 7, 14, and 18.) The corporate records indicate that Road King never received payment for the repairs or for towing services rendered to the Debtor's family.

Eventually, Road King ceased operating the Tampa location, but continued operating out of the Tarpon Springs location. The Debtor and Cladakis then began having serious disputes over the management of Road King's business, and Cladakis and Road King ultimately filed a lawsuit in the Circuit Court for Pinellas County, Florida against the Debtor. On June 8, 1990, the Circuit Court appointed Harry Biliris as a temporary receiver (Receiver) to take control of the corporate assets of Road King. (Plaintiff's Exh. 2.) In connection with his duties, the Receiver conducted an inventory of the assets of Road King. (Plaintiff's Exh. 10.) It should be noted that Cladakis inventoried the assets of Road King in December, 1989 and April, 1990, and all of the vehicles located on the premises of Road King in December, 1989. (Plaintiff's Exhs. 4, 9 and 10.) In July or August, 1990, Don Boyce, the vice president and service manager of Road King, transferred all of the assets of Road King to a corporation known as MMT Enterprises, Inc. There is no indication in the record that the Debtor was involved in this transaction in any way. It is undisputed that many of the corporate assets have disappeared and the vehicles listed on the inventory are no longer on the premises of Road King. However, there is no evidence regarding the ultimate disposition of these assets. It should be noted that Road King did not hold title to the vehicles listed on the inventory.

Based on the foregoing, the Plaintiffs allege that the Debtor transferred corporate assets and kept the proceeds, performed services for family members at no charge, stole money from Road King's petty cash fund, and stole the proceeds of checks made payable to Road King. As such, the Plaintiffs allege that any debt owing by the Debtor to the Plaintiffs should be declared nondischargeable by virtue of 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6), which provides as follows:

§ 523. Exemptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;

. . . . .

(6) for willful or malicious injury by the debtor to another entity or to the property of another entity;

Initially, it should be noted that the overriding purpose of the Bankruptcy Code is to effectuate a "fresh start" for the debtor by providing much-needed relief from the pressure and discouragement of pre-existing debt by releasing the debtor from virtually all of his debts. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Applying this clearly stated policy, the exceptions to discharge delineated in § 523 of the Bankruptcy Code are generally construed narrowly against a creditor and liberally in favor of the debtor. *See, In re Hunter*, 780 F.2d 1577 (11th Cir. 1986). Thus, the creditor has the burden to

prove that a particular obligation of the debtor falls within an exception of § 523. As noted by the Supreme Court in *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), this burden is satisfied by proof by a mere preponderance of the evidence.

A plaintiff seeking relief under § 523(a)(2)(A) must prove actual fraud, i.e., that the conduct of the Debtor involved moral turpitude or an intentional wrong. Fraud that is simply implied in law, which may exist without the imputation of bad faith, is clearly insufficient. *In re McAdams*, 11 B.R. 153 (Bankr.D.Vt.1980). In addition, the Plaintiff must prove that the Debtor obtained "... money, property, services, or an extension, renewal or refinancing of credit ..." 11 U.S.C. § 523(a)(2). In the case at bar, there is nothing in the record which shows the Debtor obtained anything by false pretenses, false representation or actual fraud from Cladakis or from Road King. The most that could be said is that the Debtor's alleged service to family members and use of petty cash were unauthorized uses of corporate funds. In sum, the claim of nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code cannot be sustained.

Regarding the contention that the debts allegedly due and owing to the Plaintiffs by the Debtor are nondischargeable pursuant to 11 U.S.C. § 523(a)(4), to prevail, the Plaintiffs must prove that the Debtor's wrongful act gave rise to personal liability, and that the Debtor is guilty of defalcation while acting in a fiduciary capacity. The issue of whether a fiduciary relationship exists is to be determined by federal bankruptcy law and not state law. *In re Elliott*, 66 B.R. 466 (Bankr.S.D.Fla. 1986). This Court has consistently ruled that in order to meet the requirements of a fiduciary relationship under § 523(a)(4) of the Bankruptcy Code, the Debtor must have acted under an express or technical trust, wherein there is a segregated trust res, an identifiable beneficiary, and affirmative trust duties established by contract or by statute. *In re Campbell*, 79 B.R. 496 (Bankr.M.D.Fla.1986); *Davis v. Aetna Ac-*

*ceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Moreover, the imposition of a constructive trust even *ex maleficio* does not give rise to a fiduciary relationship as required by § 523(a)(4) of the Bankruptcy Code. *In re Ruskin*, 34 B.R. 12 (Bankr.M.D.Fla.1983).

Based on evidence adduced at the final evidentiary hearing, this Court is satisfied that there was never any express or technical trust, created by statute or trust document, as defined by federal bankruptcy law, with the Plaintiffs. Further, with respect to Road King, the Debtor was merely a shareholder, and never was a responsible officer. There was also no proof of embezzlement or larceny. At most, it could only be argued there was an unauthorized use of funds, which falls far short of larceny and embezzlement. Consequently, the Plaintiffs have failed to prove their claims of nondischargeability based on § 523(a)(4) of the Bankruptcy Code.

This leaves for consideration the claim set forth pursuant to § 523(a)(6), which is based on the alleged willful and malicious injury by the Debtor to the property of the Plaintiffs. It is a generally-accepted proposition in this Circuit that it is not necessary to establish that the Debtor acted with ill-will toward the creditor. Instead, it is sufficient to show that he deliberately and intentionally committed an act which he knew would necessarily injure a cognizable right of the creditor. For purposes of § 523(a)(6), malice can be established by a finding of implied or constructive malice. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988). Further, although conversion is not expressly stated in § 523(a)(6), it is now uniformly recognized that willful and malicious conversion is indeed the type of conduct that comes within the exceptions of § 523(a)(6). *In re Meyer*, 7 B.R. 932 (Bankr.N.D.Ill. 1981).

Applying the mere preponderance of the evidence standard of proof to this Complaint, this Court is satisfied that the Plaintiffs did not establish with the requi-

site degree of proof that the Debtor is guilty of conversion. There is no credible evidence in this record to warrant the finding that the Debtor was involved in the transfer of any assets of the Plaintiffs, even if this created a ground to except a debt from the overall protection of the general discharge, which it did not. In addition, there was no showing that the petty cash and funds from check were not used to meet obligations of the corporation. Moreover, assuming arguendo that funds were "loans" to the Debtor, there was no proof that the loans were not repaid, or were not authorized.

In sum, this Court is satisfied that the Plaintiffs have failed to prove by a preponderance of the evidence that certain undescribed debts of the Debtor should be declared nondischargeable pursuant to § 523(a)(2)(A), (a)(4), or (a)(6) of the Bankruptcy Code. Thus, the Plaintiffs are not entitled to prevail on their claims against the Debtor, and the Complaint should be dismissed without prejudice. A separate Final Judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.