In re Teddy Joe COLLINS, Debtor.

**WORLD OMNI FINANCIAL CORPORATION,**
**Plaintiff,**

**v.**

**Teddy Joe COLLINS, Defendant.**

**Bankruptcy No. 89–3209–BKC–3P7.**
**Adv. No. 90–10.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 3, 1993.

See also 132 B.R. 491.

Raymond R. Magley, Jacksonville, FL, for plaintiff.

Gregory K. Crews, Jacksonville, FL, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the court upon complaint of World Omni Financial Corporation seeking exception to discharge pursuant to 11 U.S.C. § 523(a)(6). The trial was held on August 26, 1992, and September 24, 1992, and, upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

Defendant was president, director, and fifty percent shareholder of a car dealership located in North Carolina known as Carolina Isuzu, Inc. ("Carolina Isuzu"). Lynette Collins, who was then married to defendant, owned the remaining fifty percent of the stock.

On December 19, 1988, Carolina Isuzu entered into a floor plan financing arrangement with plaintiff. Specifically, defendant on behalf of Carolina Isuzu, executed and delivered to plaintiff a wholesale floor plan security agreement by which 1) plaintiff agreed to advance floor plan financing to Carolina Isuzu and 2) Carolina Isuzu agreed to promptly remit to plaintiff the amount due on each item of inventory financed upon the sale of such item. In addition, Carolina Isuzu granted plaintiff a security interest in the financed inventory and any sales proceeds.

Contemporaneously with the execution of the floor plan financing agreement, defendant also gave a personal guaranty to plaintiff covering all payments required under such agreement.

Defendant was responsible for all facets of Carolina Isuzu's business including daily operations, advertising, and financing. He testified that he was familiar with the floor plan financing agreement and that he understood its terms.

Shortly after the opening of Carolina Isuzu, defendant's wife, Lynette Collins, became ill, requiring her to move to Florida in December, 1988. The defendant began spending time in Florida with his wife and was away from the business. During April and May of 1989, defendant spent the majority of his time in Florida and was not present at the dealership for any significant period.

However, despite his decreased physical presence, defendant continued to actively participate in the management of the business. He was in telephone contact with the corporation every other day and, through the use of overnight couriers, continued to sign the checks for the dealership. Additionally, upon discovering that the bank account was overdrawn, defendant visited the business in late April of 1989.

Plaintiff conducted monthly floor plan audits to insure that no vehicle had been sold without remitting the proceeds to plaintiff. All audits through April, 1989, showed that no vehicles were sold "out of trust." However, the May, 1989, audit revealed that Carolina Isuzu had sold thirty vehicles financed by plaintiff without remitting the required amounts. Of the thirty vehicles two were paid for by the dealership, but the checks failed to clear. Defendant contends that the amounts due on these two due were subsequently paid.

The proceeds from the twenty-eight vehicles sold out of trust were used to pay general operating expenses of the dealership. Defendant also testified that he withdrew approximately $50,000.00 for personal expenses.

Carolina Isuzu experienced financial difficulties and eventually filed bankruptcy in North Carolina.

Debtor filed a petition in this court under chapter 7 on October 20, 1989. The case was converted to chapter 13 on February 28, 1991, and reconverted to chapter 7 on August 22, 1991.

### Conclusions of Law

■ Section 523 governs the circumstances under which a particular debt may be excepted from the debtor's general discharge. Although the underlying policy of the Bankruptcy Code is to provide the debtor with a fresh start, the exceptions are designed to prevent a dishonest debtor from using the bankruptcy process as a shield. A creditor seeking to except a debt from discharge bears the burden of proof as to each particular element through a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Section 523(a)(6) addresses willful and malicious injuries and provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

■ An act performed intentionally with knowledge that it will impair a creditor is done willfully and maliciously. Constructive or implied malice is sufficient to satisfy the malice requirement and no special showing of malice is necessary. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262–63 (11th Cir.1988); *see also, United Bank of Southgate v. Nelson*, 35 B.R. 766 (N.D.Ill.1983).

This Court has held that a willful and malicious injury under § 523(a)(6) includes the sale of collateral under a floor plan financing agreement without the lienholder's authorization or knowledge. *In re James*, 124 B.R. 614 (Bankr.M.D.Fla.1991), *aff'd*, 152 B.R. 994 (M.D.Fla.1992).

The United States Court of Appeals for the Eleventh Circuit addressed a situation similar to the instant proceeding in *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988). In that case two brothers were the sole directors, officers, and shareholders of a Michigan car dealership. One brother continued to reside in Florida (debtor) while the other assumed the primary responsibility for the business. However, the Florida brother maintained contact with the Michigan brother regarding management of the business through regular monthly telephone calls and at least one personal visit. The Court found such contact to be sufficient to establish the Florida brother's personal involvement in the dealership and affirmed the lower court's finding that the debtor had committed a willful and malicious injury under § 523(a)(6).

■ Applying the law to the instant proceeding, defendant participated in the conversion of the twenty-eight vehicles. The evidence showed that defendant maintained regular contact with the dealership and made at least one trip to the business in late April of 1989. In addition, defendant continued to sign the business checks, retaining control over the corporation's finances. Defendant's degree of involvement exceeded that of the debtor in *Chrysler Credit Corp.* Obviously, defendant was actively involved in the management of Carolina Isuzu and participated in the conversion of the vehicles.

The two vehicles for which the checks were returned are not included within the reach of the Court's finding of conversion. Defendant contends that payment was made for such items and the plaintiff failed to sustain its burden in proving that those two vehicles were actually converted.

■ The measure of damages in an action for conversion is the fair market value of the property converted on the date of the conversion. *See In re James*, 124 B.R. at 616. The Court finds that the fair market value of each new vehicle on its conversion date was equal to the cost of each new vehicle to Carolina Isuzu. The fair market value of the used vehicles on the date each was converted was equal to the average trade-in value listed in the May, 1989, issue of the National Automobile Dealers Association ("NADA") Official Used Car Guide. The fair market value of the used vehicles not listed in the NADA guide was equal to the amount financed by plaintiff. The Court finds that the conversion date value of each individual vehicle was the amount listed in Schedule A. Ac-

cordingly, the total fair market value of the twenty-eight converted vehicles was $295,-173.40.

By agreement of the parties, the amount of damages shall be reduced by $36,318.00 which consists of 1) $17,000.00 paid by Lynette Collins to plaintiff and 2) $19,318.00 paid by Carolina Isuzu's chapter 7 estate to plaintiff. Therefore, the amount of damages sustained by plaintiff as a result of the conversions totals $258,855.00 and such amount will be excepted from defendant's discharge.

A separate Judgment in favor of plaintiff will be entered.

## JUDGMENT

Upon the Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. Judgment is entered in favor of Plaintiff, World Omni Financial Corporation, and against Defendant, Teddy Joe Collins.

2. Pursuant to 11 U.S.C. § 523(a)(6), the debt of $258,855.00, plus $120.00 in costs, together with interest at the legal rate of 3.45 percent per annum, owed by Defendant to Plaintiff shall be excepted from Defendant's discharge.

*Schedule A*