United States Court of Appeals,

Eleventh Circuit.

No. 94-2814.

In re Stephen P. WOLFSON, Debtor.

Stephen P. WOLFSON, Plaintiff-Appellant,

v.

EQUINE CAPITAL CORPORATION, a Delaware Corporation, Defendant-Appellee.

June 27, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-944-Civ-Orl-06(22), George C. Young, Judge.

Before CARNES and BARKETT, Circuit Judges, and GIBSON[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

Appellant Stephen P. Wolfson ("Wolfson") appeals from a district court judgment affirming a bankruptcy court's decision excepting $1,815,805 of Wolfson's debt from discharge. Because we conclude that the debt was excepted in error, we reverse.

From 1971 to 1990, Wolfson and his brother, Gary, were partners in a horse farm known as the Happy Valley Farm (the "Farm"). In 1987, Equine Capital Corporation ("ECC") replaced Citibank, N.A., as the Farm's primary lender, making ten loans to the Farm between 1987 and 1989. For most of these loans, the Farm pledged various interests in horses as collateral. Subsequently, five of the loans went into foreclosure.[1] During this period, the

_____

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]Wolfson entered into each of the loan transactions as general partner of the Farm, and as an individual co-maker.

Farm routinely deposited its income, including proceeds from the sale of collateralized horses, into its general business account; it paid to ECC whatever it could of amounts due on a monthly basis, while adding amounts it could not pay to its total indebtedness. The bankruptcy court found that ECC knew of and at no time objected to these practices. Indeed, even though it was well aware of the practices, ECC continued to renew and extend additional credit to the Farm, hoping that such cash infusions would eventually return it to profitability. Ultimately, however, ECC declared the Farm loans to be in default due to nonpayment of interest and principal, and the Farm terminated its business operations surrendering its remaining horses and other collateral to ECC. While nine months earlier ECC had valued these assets at $7,810,000, it received only $1,300,000 when it eventually sold them.

Subsequently, Wolfson filed a voluntary petition under Chapter Seven of the Bankruptcy Code in the U.S. Bankruptcy Court in Jacksonville, Florida. In hopes of avoiding discharge of Wolfson's $5,120,058 debt, ECC commenced an adversary proceeding in the bankruptcy court filing a twelve-count complaint under 11 U.S.C. § 523, based upon various allegations of misconduct by Wolfson. According to 11 U.S.C. § 523(a)(6):

> (a) A discharge under ... this title does not discharge an individual debtor from any debt—
>
> .....
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over

goods belonging to another to the exclusion of the owner's rights. In count VI, ECC specifically alleged that Wolfson had "converted to his own use or the use of Happy Valley Farm" various horses "or the proceeds thereof" which he had pledged as collateral in security agreements with ECC, and that "his transfer of collateral previously pledged to ECC, or the diversion of proceeds of said collateral was willful, malicious, and done with intent to harm ECC." The bankruptcy court entered a final judgment favoring ECC on count VI, finding that Wolfson's "retention of proceeds which should have been remitted to Plaintiff was done deliberately and without justification" and that "[a]ccordingly, the Defendant committed a willful and malicious act that caused injury to Plaintiff." As a result, the court excepted $1,815,805 of Wolfson's debt from discharge. Wolfson appealed from the judgment on count VI to the district court, but the district court affirmed the bankruptcy court.

We conclude that the district court erred in finding that Wolfson's retention of proceeds and failure to make payments of debt entitled ECC to an exception to discharge. While under 11 U.S.C. § 523(a)(6), discharge is not permitted where there has been "willful and malicious injury by the debtor to another entity or to the property of another entity," the U.S. Supreme Court has observed that such an injury "does not follow as of course from every act of conversion, without reference to the circumstances," *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). In some circumstances, found the Court, "[t]here may be an honest, but mistaken belief, *engendered by a*

*course of dealing,* that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one." *Id.* (emphasis added);[2] *see also In re Billy F. McGinnis,* 586 F.2d 162, 163 (10th Cir.1978).

Here, the course of dealing clearly indicates that Wolfson had a reasonable belief that his business practices were known to his secured creditor. More importantly, it indicates that the secured creditor knowingly acquiesced in Wolfson's business practices, and took no steps to protect its collateral. The Farm kept standard business records, accounting for all of the income received from operations and sales, including purse money earned at horse races and proceeds from the sale of horses. The Farm's bookkeeper provided ECC with all of the financial information ECC requested, including an accounting of all sale proceeds, on a monthly basis. In fact, at the end of each month, the bookkeeper would meet with an ECC representative and determine the amounts due ECC. On this basis, ECC knew that the Farm placed its proceeds into a general account out of which it paid ordinary business expenses, and knew also which of the loan collateral the Farm had sold during the month. Wolfson's belief, engendered by a course of dealing, was thus reasonable, and under *Davis* could support the conclusion that if Wolfson committed the tort of conversion, it was not a willful or malicious one.

However, it is not necessary to reach the question of whether

_____

[2]. For linguists, we note that English lexicographers regard "wilful" and "willful" as acceptable variants. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1465-1466 (1976). The Supreme Court used "wilful" in <u>Davis</u>.

Wolfson's actions were willful and malicious, nor the question of whether Wolfson's sale of collateral and failure to remit the proceeds amounted to conversion. As the bankruptcy court recognized, ECC not only knew of and failed to object to the Farm's sales of collateral and its business practice of depositing all proceeds into a general business account, but ECC also continued to renew and extend additional credit to the Farm. For example, ECC loaned the Farm $600,000 on June 29, 1988; $2,400,000 on February 21, 1989; $1,800,000 on February 21, 1989; $900,000 on February 21, 1989; $500,000 on February 21, 1989; and $150,000 on October 6, 1989. We find that since ECC failed to enforce whatever rights it may have had regarding the disposition of its collateral, it waived its right to assert under 11 U.S.C. § 523(a)(6) that its claim is non-dischargeable and that it suffered "willful and malicious" injury by Wolfson. If ECC "acquired knowledge" of Wolfson's alleged conversion and did so when "it could have asserted its security interest in the property and failed to take reasonable steps to protect its security, the indebtedness should be discharged." *Bennett v. W.T. Grant, Co.,* 481 F.2d 664, 666 (4th Cir.1973). Put another way, ECC's "failure to take reasonable steps to protect its collateral ... prevented application of the exception." *McGinnis,* 586 F.2d at 163.

Therefore, under the facts of this case, we conclude that the district court erred in finding that ECC was entitled to an exception to discharge, and, accordingly, we REVERSE the district court's judgment as to count VI and REMAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.