In re James Edmund **DERESINSKI** and Beverley Ann Deresinski, Debtors.

**JOHN DEERE COMPANY, Plaintiff,**

v.

**James Edmund DERESINSKI and Beverley Ann Deresinski, Defendants.**

Bankruptcy No. 96–7363–3P7.

Adversary No. 97–79.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Jan. 5, 1998.

Richard R. Thames, Jacksonville, FL, for Plaintiff.

Ronald Bergwerk, Jacksonville, FL, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon Complaint filed by John Deere Company, seeking an exception to the defendants' discharge pursuant to 11 U.S.C. § 523(a)(6).[1] A trial was held on October 16 and November 3, 1997, and upon the evi-

dence presented the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. From February, 1988, until March, 1996, James E. Deresinski (Defendant) was the president and sole shareholder of Omni–Quip of Jacksonville, d/b/a Omni–Quip Rentals and Sales (Omni–Quip).

2. On March 28, 1988, Defendant executed a John Deere Company Authorized Consumer Products Agreement, on behalf of Omni–Quip, with John Deere Company (Plaintiff).[2] (Pl.Ex.3.)

3. Pursuant to the Consumer Products Agreement, Omni–Quip was appointed a John Deere Dealer and became authorized to merchandise John Deere products. (*Id.*)

4. Under the agreement, (i) title and ownership of the products passed to the dealer upon delivery, and (ii) payment to Plaintiff was due upon the sale of the products by the dealer. (Tr. at 16; Pl.Ex. 3.)

5. To secure its indebtedness to Plaintiff, Omni–Quip granted Plaintiff a security interest in its inventory, the proceeds from the sale or rental of the inventory, and the insurance proceeds of the inventory. (Pl.Ex.3.)

6. Plaintiff perfected its security interest in Omni–Quip's inventory and the proceeds from the inventory by filing UCC–1 Financing Statements with the Secretary of State for the State of Florida and the Clerk of Court for Duval County, Florida. (Pl.Ex.4.)

7. On March 28, 1988, Defendant also executed a personal guaranty in which he guaranteed payment of any sum owed by Omni–Quip to Plaintiff under the Consumer Products Agreement. (Pl.Ex.5.)

8. Pursuant to the Consumer Products Agreement, payment for items subject to Plaintiff's security interest was due immediately upon sale by Omni–Quip. In practice,

1. An Order Dismissing Beverley A. Deresinski as Party Defendant was entered on November 12, 1997.

2. On December 10, 1992, Defendant executed a John Deere Company Authorized Commercial Products Dealer Agreement, and a John Deere Company Authorized Lawn and Garden Dealer Agreement on behalf of Omni–Quip due to the relocation of Plaintiff's division of consumer products from Georgia to North Carolina. (Tr. at 15; Pl.Ex. 6, 7.)

Plaintiff accepted payment from Omni–Quip once or twice a month. (Tr. at 42.)

9. Payment was made by mailing the payment to Plaintiff along with a settlement document. (Tr. at 83.) The settlement document is a form designed by Plaintiff on which the dealer reports all of its sales. (*Id.*)

10. During its time as a Deere dealer, Omni–Quip was audited every thirty to sixty days, (Tr. at 34), in accordance with Plaintiff's practice of periodically auditing its dealers. (Tr. at 17.)

11. Omni–Quip received monthly dealer statements from the Plaintiff which included a list of shortages[3], if any, asserted by the plaintiff.

12. The relationship between Omni–Quip and Plaintiff continued until March, 1996, when Defendant closed the business.

13. The defendant notified Plaintiff of his intention to cease doing business in a letter to Bob Wilson, Plaintiff's territory manager, dated February 19, 1996. (Pl.Ex.17.)

14. On March 4, 1996, Mr. Wilson conducted an audit of Omni–Quip and determined there was a shortage of several items. (Pl.Ex.11.) This was the first time since the beginning of Omni–Quip's relationship with Plaintiff that it was found to be short on collateral. (Tr. at 35.)

15. On March 20, 1996, Mr. Wilson returned to Omni–Quip in order to begin removing the remaining Deere products. (Tr. at 125.) Mr. Wilson again conducted an audit over a period of approximately two and one-half days, and again found several items missing. (Tr. at 125, 128–29.) Although the defendant had scheduled Mr. Wilson's visit, he failed to appear at the dealership at any time during the two and one-half day period. (Tr. at 126.)

16. The defendant first testified that he never knew that Mr. Wilson conducted an audit, (Tr. at 74), but later changed his testimony to indicate that he was told after the fact by his office manager that the audit had taken place. (Tr. at 76.)

17. In a letter dated June 3, 1997, Plaintiff notified Defendant that a balance of $12,918.38 remained on Omni–Quip's account, which was then due and payable. (Pl.Ex.18.)

18. Defendant responded to Plaintiff's letter on June 11, 1996, and informed Plaintiff of his belief that discrepancies existed in their reported balance. (Pl.Ex.19.) Defendant admitted that he had been furnished with the Plaintiff's "end work product", but requested that he be provided with information showing how Plaintiff had arrived at the final balance. (*Id.*)

19. On September 18, 1996, Plaintiff corresponded with the defendant, asserting its willingness to correct any errors with the account. (Pl.Ex.20.)

20. The Plaintiff, having failed to secure payment from the defendant, then filed this adversary proceeding on March 7, 1997, seeking the exception of its debt from the defendant's discharge pursuant to 11 U.S.C. § 523(a)(6).

21. Plaintiff contends that the following items were sold by Omni–Quip, but the proceeds from the sales not remitted to Plaintiff as required by the security agreement:

| | | |
|---|---|---|
| 1 | STX 38 Gear Lawn Tractor SN: MOOSTXH275108 | $ 1,596.80 |
| 1 | STX 38 Gear Lawn Tractor SN: 0000000278038 | $ 1,596.80 |
| 1 | STX 38 Gear Lawn Tractor SN: 0000000271312 | $ 1,596.80 |
| 12 | 14″ Walk Behind Mowers | $ 5,768.82 |
| | TOTAL: | $10,559.22 |

22. Plaintiff's claim of entitlement to an exception to the defendant's discharge is best described by classifying the equipment for which it seeks an exception. The first category consists of the STX 38 Gear Lawn Tractor, SN MOOSTXH275108. This tractor was sold by the defendant to the Navy with the plaintiff's approval. (Tr. at 51.) Plaintiff agreed to wait for payment until 60 days after the sale. (Tr. at 90.) The tractor was charged by the Navy, and the defendant

---

**3.** Plaintiff utilizes the term "shortage" to refer to products it claims should be present at the dealership, and are not.

testified that he "had to believe" that payment was made. (*Id.*)

The second category of equipment includes the items that appear both on the final settlement report[4] filled out by the defendant and Plaintiff's June, 1997, monthly dealer statement.[5]

The third group of equipment consists of the items that appear only on Plaintiff's June, 1997, monthly dealer statement, and not on the defendant's final settlement report.[6]

23. Defendant concedes that the proceeds for the following items were not remitted to Plaintiff, even though the items were sold:

| | | |
|---|---|---|
| 1 | STX 38 Gear Lawn Tractor SN: MOOSTXH275108 | $ 1,596.80 |
| 1 | STX 38 Gear Lawn Tractor SN: 0000000278038 | $ 1,596.80 |
| 1 | STX 38 Gear Lawn Tractor SN: 0000000271312 | $ 1,596.80 |
| 9 | 14″ Walk Behind Mowers | $ 3,765.99 |
| | TOTAL: | $ 8,556.39 |

24. Defendant claims that sometime following his receipt of the plaintiff's letter in June, he found the final settlement report for Omni–Quip as well as a check to Plaintiff in the amount of $6,043.59 in his records. (Tr. at 97.) The final settlement report listed the above items as sold, and the accompanying check was made out to Plaintiff in an amount equal to the proceeds due to the plaintiff for the items listed on the settlement report.[7] (Def.Ex.1.)

25. Defendant testified that he prepared the final settlement and check, but that it was his office manager's responsibility to mail the documents. (Tr. at 85–86.) Defendant stated that he does not know why the documents were never mailed. (Tr. at 156, 162.)

26. It was also the defendant's testimony that, notwithstanding the check to Plaintiff

which remained outstanding, Omni–Quip's bank account was closed and the remaining balance transferred to the bank to satisfy a debt. (Tr. at 115, 156.)

## CONCLUSIONS OF LAW

Exceptions to discharge serve the purpose of attempting to prevent the debtor from avoiding the consequences of wrongful conduct by filing a bankruptcy case. *Hall v. Johann (In re Johann)*, 125 B.R. 679, 681 (Bankr.M.D.Fla.1991). However, courts narrowly construe the exceptions to discharge provided by § 523 against a creditor and liberally in favor of the debtor in order to further the policy behind the Bankruptcy Code of providing debtors with a "fresh start". *Cladakis v. Triggiano (In re Triggiano)*, 132 B.R. 486, 489 (Bankr.M.D.Fla. 1991).

Section 523(a)(6) excepts from a debtor's discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1994). The burden of proof rests on the creditor to prove the elements of the statute through a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The Eleventh Circuit interprets the term "willful" as requiring an intentional or deliberate act, and not merely an act done in reckless disregard of the rights of another. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir.1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989); *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988)).

Although the statute speaks of "malicious injury", a creditor need not establish express malice to except a debt under § 523(a)(6). *Rebhan*, 842 F.2d at 1263. A finding of implied or constructive malice will suffice to except the debt from the debtor's

---

4. Final settlement document or report refers to the last settlement document the defendant filled out before closing the business.

5. Those items are: two STX 38 Gear Lawn Tractors, and six walk behind mowers.

6. After an amendment to Plaintiff's Complaint, six walk behind mowers remain on the monthly dealer statement as shortages.

7. The check was made out for the amount of the proceeds due to the plaintiff minus any applicable rebates. (Def.Ex.1.)

discharge. *Id.* Implied or constructive malice can be established by a showing that the debtor "deliberately and intentionally committed an act which he knew would necessarily injure a cognizable right of the creditor." *In re Triggiano,* 132 B.R. at 490. Constructive malice may also be found if the nature of the act itself implies a sufficient degree of malice. *Lee v. Ikner (In re Ikner),* 883 F.2d 986, 991 (11th Cir.1989) (citation omitted).

The complaint alleges that the defendant's failure to remit collateral, or the proceeds therefrom, constituted a conversion of Plaintiff's property, and was therefore a willful injury within the meaning of § 523(a)(6). (Pl.'s Compl. ¶ 8.) Previous decisions of this Court have confirmed that a "willful and malicious injury" includes conversion, which is defined as the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights. *Wolfson v. Equine Capital Corp. (In re Wolfson),* 56 F.3d 52, 54 (11th Cir.1995), *reh'g and reh'g en banc denied,* 66 F.3d 343 (11th Cir.1995). However, every act of conversion does not necessarily constitute a willful and malicious injury by the debtor. *Id.* (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)); *Deere Credit Services, Inc. v. Thomas (In re Thomas),* 116 B.R. 287, 289 (Bankr. M.D.Fla.1990) ("The mere failure to pay over to a creditor money received from the sale of secured property is not necessarily a willful and malicious conversion.") (citations omitted).

In the instant proceeding, the defendant admits that the proceeds from the equipment listed as sold on the final settlement were never remitted to Plaintiff as required by the security agreement. The Court holds that Defendant's failure to remit these proceeds constituted a conversion of the plaintiff's property. The remaining question is whether the conversion was willful and malicious so that the debt must be excepted from the defendant's discharge.

In order to obtain an exception to the defendant's discharge pursuant to § 523(a)(6), Plaintiff relies on this Court's prior decisions holding that the willful sale of collateral without the secured party's consent constitutes a willful and malicious injury sufficient to except a debt from discharge. *Mercury Fin. Co. of Georgia v. Muto (In re Muto),* 124 B.R. 610 (Bankr.M.D.Fla.1991); *Barnett Bank of Columbia County v. Ogden (In re Ogden),* 119 B.R. 277 (Bankr.M.D.Fla. 1990); *In re Thomas,* 116 B.R. at 287. These cases are inapplicable to the case at bar due to the fact that the sale of collateral was exactly what the security agreement between Plaintiff and Defendant contemplated. However, Plaintiff also relies on previous decisions in this circuit establishing that a debtor who participates in the conversion of proceeds from the sale of inventory financed under a floor plan financing arrangement will be held liable to the creditor, and that the corresponding debt is nondischargeable under § 523(a)(6). *Transamerica Commercial Fin. Corp. v. James (In re James),* 124 B.R. 614 (Bankr.M.D.Fla.1991), *aff'd,* 152 B.R. 994 (M.D.Fla.1992); *World Omni Fin. Corp. v. Collins (In re Collins),* 151 B.R. 967 (Bankr. M.D.Fla.1993); *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556, 1559 (11th Cir.1987) ("To the extent that Dothan Lincoln–Mercury [the dealership] failed to comply with the terms of the floor plan, it was guilty of conversion of property. The evidence established that Dothan Lincoln–Mercury disposed of a number of vehicles ... without accounting for the proceeds to FMCC [the creditor] in contravention of the expressed trust provisions of the floor plan.")

### STX 38 Gear Lawn Tractor, SN MOOSTXH275108

The Court finds that the defendant willfully and maliciously converted the STX 38 lawn tractor sold by Defendant to the Navy. Defendant testified that he "had to believe" Omni–Quip had received payment from the Navy, but that payment was never remitted to the plaintiff. (Tr. 90.) Defendant knew payment was due to Plaintiff and believed payment had been received from Omni–Quip's customer, yet he intentionally failed to remit any proceeds to the plaintiff. This constitutes conversion and establishes a willful and malicious injury under § 523(a)(6).

In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Supreme Court of the United States held that malice is lacking where there is an "honest but mistaken belief engendered by a course of dealing that powers have been enlarged or incapacities removed." *Id.* at 332, 55 S.Ct. at 153. Although Defendant's powers were enlarged to accept late payment from the Navy they were not enlarged to allow defendant to keep the proceeds from the tractor once they were received. The defendant remained obligated to remit those proceeds to the plaintiff once he received payment, which he failed to do.

Defendant asserts that the tractor sold to the Navy was not a shortage, but was sold under extended terms with the plaintiff's consent. Although an inference of malice may be rebutted by a showing that the secured creditor acquiesced to the debtor's actions, *Wolfson v. Equine Capital Corp.*, 56 F.3d 52, 54 (11th Cir.1995), *reh'g and reh'g en banc denied*, 66 F.3d 343 (11th Cir.1995), that is not what occurred here. The plaintiff consented to the defendant's agreement with the Navy to extend the payment date for sixty days, but did not consent to Defendant's conversion of the payment once in fact it was received.

### *Items on Final Settlement And June, 1997 Monthly Dealer Statement*

In *In re Collins*, 151 B.R. at 967, this Court excepted a debt from the defendant's discharge pursuant to § 523(a)(6) based on the defendant's participation in the conversion of the proceeds of twenty-eight vehicles. Defendant was president, director, and fifty percent shareholder of a car dealership. *Id.* at 969. The dealership entered into a security agreement with the plaintiff which entitled the plaintiff to the proceeds of the inventory financed pursuant to the agreement. *Id.* A few months after the dealership opened, the defendant began spending the majority of his time in another state, and was consequently absent from the dealership. *Id.* However, although not physically present, the defendant continued his active participation in the management of the dealership, including maintaining contact with the dealership and signing checks for the business. *Id.*

At an audit conducted by the plaintiff in *Collins*, twenty-eight vehicles were found to have been sold "out of trust". *Id.* The proceeds from the vehicles were not remitted to the plaintiff pursuant to the security agreement, but were used to pay general operating expenses of the dealership. *In re Collins*, 151 B.R. at 969. This Court found that due to the defendant's continued control over the dealership's finances, the defendant had participated in the conversion of the vehicles, despite the absence of his physical presence from the business. *Id.* at 970.

In the instant case, Defendant was not only in control of Omni–Quip's finances, but was constantly present at the dealership up until the close of the business. The defendant had no good faith reason for failing to remit the proceeds of Plaintiff's equipment as required by the security agreement. The defendant was the president and sole shareholder of the dealership and during the eight year existence of the dealership was responsible for filling out final settlements as well as the accompanying checks. Defendant was essentially the only major player in the dealership and was completely accountable for its management.

The nature of the circumstances surrounding the final settlement suffice to establish a willful and malicious conversion. Defendant sold the items listed on the final settlement with the knowledge they were subject to Plaintiff's security interest, and, he intentionally failed to remit the proceeds from those items to the plaintiff, knowing that economic injury to the plaintiff would result.

### *Remaining Items on June, 1997 Monthly Dealer Statement*

The Plaintiff has failed to sustain its burden in proving that the six mowers listed on the June, 1997, monthly dealer statement, but not listed on the final settlement report, were converted by the defendant. Plaintiff determined that the subject mowers were short by consulting an inventory statement,

which is a document purportedly evidencing the equipment the plaintiff should find present at the dealership.

However, the plaintiff's credit specialist, Irna Curtis, could not verify that the inventory statement was proof that the equipment listed thereon was actually delivered to Omni–Quip. Rather, she testified that the inventory statement was an "indication" that the listed equipment was actually delivered to the dealership. (Tr. at 47.) Mr. Wilson testified that the inventory statement reflects all of the mowers that Plaintiff's records show should have been on the Omni–Quip premises. (Tr. at 122.) However, no records establishing delivery were produced. Plaintiff has been unable to supply the Court with any additional evidence tending to prove that Defendant ever received the six mowers.

## CONCLUSION

The Court holds that the evidence establishes a willful and malicious conversion by the defendant of the proceeds of the following property:

| | | |
|---|---|---|
| 1 | STX 38 Gear Lawn Tractor SN: MOOSTXH275108 | $ 1,596.80 |
| 1 | STX 38 Gear Lawn Tractor SN: 0000000278038 | $ 1,596.80 |
| 1 | STX 38 Gear Lawn Tractor SN: 0000000271312 | $ 1,596.80 |
| 6 | 14″ Walk Behind Mowers | $ 2,312.81 |
| | TOTAL: | $ 7,103.21 |

The defendant is personally liable for the conversion of the proceeds from the above items due to his official capacity with Omni–Quip, and his participation in the conversion of the proceeds. *See Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559–60 (11th Cir. 1987). The above debt is therefore excepted from the defendant's discharge pursuant to 11 U.S.C. § 523(a)(6).

Finally, the plaintiff has requested an award of prejudgment interest. The Court exercises its discretion and declines to award prejudgment interest given the tort-based nature of Plaintiff's claim.

A separate judgment in favor of Plaintiff will be entered in accordance with these Findings of Fact and Conclusions of Law.