In re Dennis E. **WILSON** and Susan J. Wilson, Debtors.

**COMMUNICATIONS FAMILY CREDIT UNION, Plaintiff,**

v.

Dennis E. **WILSON** and Susan J. Wilson, Defendants.

**Bankruptcy No. 90–01948–8P7.
Adv. No. 90–300.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 27, 1991.

Marshall G. Reissman, for plaintiff.

Charles A. Medearis, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 case and the matter under consideration is a Complaint to determine the dischargeability of a debt due and owing by Dennis E. Wilson and Susan J. Wilson (Debtors) to Communications Family Credit Union (Credit Union) pursuant to § 523(a)(2)(A) and § 523(a)(6) of the Bankruptcy Code. Count I of the Complaint has been dismissed by Order of this Court and only Count II remains for consideration. In Count II, the Credit Union contends that the Debtors, with intent to defraud the Credit Union, converted the proceeds obtained by them from the sale of a 1987 Nissan Stanza, and "maliciously deprived the Plaintiff of its status as a secured creditor" [sic] with respect to the car.

The Court considered the record, including the documentary evidence, and finds the following facts relevant to the disposition of the claim of nondischargeability.

In January 1988, the Debtor Susan J. Wilson borrowed $13,650.00 from the Credit Union. The stated purpose of the loan was to purchase a 1987 Nissan Stanza. The loan was to be secured by a lien on the car, and the Debtors executed a Security Agreement to that effect. (Plaintiff's Exh. No. 1). A check in the amount of $13,-650.00 issued by the Credit Union to 'the Debtor was made payable to Susan J. Wilson and Crown Nissan, jointly. Susan J. Wilson endorsed the check. (Plaintiff's Exh. No. 2). Below the signature line on the back of the check, there is a statement which reads, "Endorsement of this check constitutes agreement on the part of payees to establish a lien in favor of the Communications Family Credit Union on the goods purchased hereby." (Plaintiff's Exh. No. 2).

In due course, a certificate of title was issued for the Nissan by the State of Florida. The certificate identified Dennis E. Wilson as the registered owner; however, it failed to indicate any lien in favor of the Credit Union. (Plaintiff's Exh. No. 3). The Credit Union's lien was never perfected and no lien was ever indicated on the title.

In August 1988, the Credit Union sent two letters to Susan J. Wilson informing her that her loan was in default because she failed to provide proof of insurance and proof of the Credit Union's lien on the vehicle, despite its prior requests. (Plaintiff's Exh. No. 5). The Debtor Dennis E. Wilson responded and stated that he understood that it was the Credit Union's responsibility to perfect its lien by having the lien recorded on the title certificate. (Plaintiff's Exh. No. 5).

In January 1990, the Debtors traded in the Nissan Stanza for a 1990 Mercury Cougar. The balance then due on the Nissan Stanza was $9,511.23. The Debtor Dennis E. Wilson, who for one month sold used cars, testified that he understood the Credit Union would no longer have a security interest in the Nissan Stanza once it was traded in or sold. The Mercury Cougar dealer later sold the Stanza for $7,738.00.

It should be noted at this juncture that the underlying purpose of the Bankruptcy Code is to give the Debtor a new opportunity in life and a clear field for future efforts, unhampered by pressures of existing debt. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Congress designed the discharge provisions of the Bankruptcy Code to give the debtor a fresh start, free from the obligations associated with previous business misfortunes. Therefore, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor, and the creditor must prove his case by clear and convincing evidence. *In the Matter of Bonanza Import and Export*, 43 B.R. 577 (Bankr. S.D.Fla.1984). Although the language of § 523 does not dictate the standard of proof of exceptions to discharge, the Supreme Court has determined that the preponderance of the evidence standard of

proof is appropriate in cases under § 523(a) of the Bankruptcy Code. *In re Garner,* 73 B.R. 26 (Bankr.W.D.Mo.1987), *rev'd.,* 881 F.2d 579 (8th Cir.1989), *rev'd.,* — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755, 1991 U.S. Lexis 482 (1990). Thus, the Supreme Court has rejected the argument that the clear-and-convincing standard is required to give effect to the "fresh start" policy of the Bankruptcy Code. *Id.*

The claim of nondischargeability which remains for consideration is based in part on § 523(a)(6), which provides:

§ 523. **Exceptions to discharge**
(a) A discharge under ... this title does not discharge an individual debtor from any debt—
    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

■ This Court is aware that there is a split in authority regarding the phrase "willful and malicious." This phrase has been interpreted by some courts to require an intentional act which results in injury, and by other courts, a specific intent to injure. *See, e.g., In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982); *In re Finnie,* 10 B.R. 262 (Bankr.Mass.1981). This Court is inclined to follow the former, more liberal line of authority, which does not require a creditor to prove that a debtor's motive was to harm the creditor or the creditor's interest in property. *Communications Workers of America v. Akridge,* 89 B.R. 66 (9th Cir.BAP 1988). This Court is satisfied that an intentional act which produces harm and is without just cause or excuse may be characterized as "willful and malicious", notwithstanding the fact that there may be no proof that the debtor had a specific intent to injure the creditor. *In re Cecchini,* 772 F.2d 1493, 1496 (9th Cir. 1985).

■ While this Court has no difficulty in concluding that the Debtor's act was willful and malicious, in order for the Credit Union to prevail on its claim under § 523(a)(6), the Credit Union must also prove that the Debtor's act injured the property of the Credit Union. It is undisputed that the Credit Union failed to perfect its lien on the Nissan, and thus had only an unperfected security interest in the Nissan. In light of this, it might be argued that the Debtor's acts did not harm the Credit Union's property interest. *See, In re Fields,* 44 B.R. 322, 330 (Bankr.S.D.Fla. 1984). However, this argument ignores the fact that as an unperfected secured creditor, the Credit Union had rights in the Nissan vis-a-vis the Debtor. Admittedly, the Credit Union had no rights in the Nissan against a host of third parties, including bona fide purchasers for value and the strong arm trustee under § 544(a) of the Bankruptcy Code. When the Debtors traded in the Nissan, they effectively destroyed any interest the Credit Union had in the Nissan vis-a-vis the Debtor. Thus, this Court is satisfied that the Debtors did, in fact, injure the property of the Credit Union. Therefore, the Credit Union is entitled to prevail on its claim of nondischargeability under § 523(a)(6).

In light of the foregoing, it is unnecessary to consider the Credit Union's claim of nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.