142

In re William G. IHRINGER, and Elvira L. Ihringer, Debtors.

Ernest AMMANN, and E. Ammann, Inc., Plaintiffs,

v.

William G. IHRINGER, Defendant.

Bankruptcy No. 91–5347–BKC–3F7.
Adv. No. 93–457.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 11, 1994.

Robert Altman, Palatka, FL, for plaintiffs.

Walter M. Snell, Jacksonville, FL, for William G. Ihringer.

## OPINION

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court on Plaintiff's two-count complaint seeking to except from discharge a money judgment entered in state court on September 10, 1993, for attorney's fees and costs in the amount of $6,765.00, plus interest. *See* 11 U.S.C. § 523(a)(6). The Court conducted a trial on April 28, 1994, and upon review of the evidence presented and the parties' memoranda, enters the following findings of fact and conclusions of law. *See* Fed.R.Bankr.P. 7052. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

### FINDINGS OF FACT

Ammann, the Plaintiff, is a real estate developer. Ihringer is Ammann's former partner and a construction contractor. This proceeding involves a longstanding dispute between Ammann and Ihringer over a project known as the Sunrise Villas Development ("Sunrise") located in Palm Coast, Florida.[1] Ammann's Sunrise project entailed construction of 28 unit townhouses and the subdivision of the property into 14 lots. In 1985, Ammann proceeded to build Sunrise, and he enlisted the help of Ihringer's company, Gulf Star Builders, Inc. ("Gulfstar"), to

1. The project was formally known as Regency Park and Regency Plaza.

serve as prime contractor. Ihringer accepted Ammann's offer and on August 24, 1985, signed a construction contract, which included an option to purchase the property (the parties did not submit this contract into evidence). The contractual option granted Ihringer the right to purchase parcel A and lots 4 and 5 (as recorded in Map Book 4, Page 2).

Thereafter, the parties had a disagreement which resulted in Ihringer filing a lawsuit in state court (Case No. 87–391–CA) on behalf of Regency Park, Inc., consisting of two counts: one for specific performance and the other for breach of contract. Plaintiff Exhibit 1. Ammann answered and filed an amended counterclaim which alleged multiple claims for relief: breach of fiduciary duty, breach of oral partnership, conversion, civil theft, ejectment, breach of option contract, slander of title, quiet title, and declaratory relief. Plaintiff Exhibit 3. Also, Ammann filed a third-party complaint against Ihringer and Gulfstar. Plaintiff Exhibit 4.

The thrust of the previous litigation—from Ihringer's perspective—concerned his entitlement to monies promised as an advance. Ihringer claimed that the parties agreed orally for Ammann to pay him an advance prior to beginning construction. In addition, Ihringer asserted that the contract option expressly authorized him, upon exercising the option, to purchase the property at a *fixed and definite price*. Ammann alleged in defense that Ihringer failed to perform as promised; Ihringer was to "provide services in connection with the development of said properties, including model homes, infrastructure and the development of a commercial use office condominium complex." Plaintiff Exhibit 1, ¶ 4. In addition, Ammann alleged that Ihringer agreed to release and terminate the real estate purchase option for $6,370.97. Ammann's remaining defenses included allegations of misconduct.

That 1987 lawsuit was settled by the parties. The parties met on August 15, 1988, to complete the settlement agreement. Am-

mann paid Ihringer $95,000.00 and prepared, in German, a written receipt. Plaintiff Exhibit 7. Ihringer signed the receipt,[2] executed a quit claim deed, and returned various plans and drawings. Plaintiff Exhibit 8.

In addition, Ihringer executed a release as an individual and on behalf of Regency Park, Inc., and Gulfstar. The relevant part of that agreement provides:

> KNOW ALL MEN BY THESE PRESENTS, that we, William G. Ihringer, Regency Park, Inc., a corporation, and Gulf Star Builders, Inc., a Florida corporation, for the consideration of the sum of $10.00 and other valuable consideration paid to one or more of us by or on behalf of Ernst U. Ammann and/or E. Ammann, Inc., a corporation, the receipt whereof is hereby acknowledged, and in return for dismissal with prejudice of those counterclaims against William G. Ihringer and Gulf Star Builders, Inc., in case No. 87–391–CA, in the Circuit Court of the Seventh Judicial Circuit, In and For Flagler County, Florida, styled *Regency Park, Inc. v. Ernst U. Ammann v. William G. Ihringer and Gulf Star Builders, Inc.,* do hereby release, acquit and discharge the said Ernst U. Ammann and E. Ammann, Inc., a corporation, their agents, employees, representatives, heirs, successors, and assigns *from all claims, demands, actions, damages, lawsuits and expenses on account of, or in any way growing out of, those matters set forth in the lawsuit, or on account of or in any way growing out of that real property* described on Exhibit "A" attached hereto and generally known as the Easterly and Westerly Parcel of Reserve Parcel A, Section 2, Florida Park at Palm Coast, and Lots 4 and 5, Block 2, Section 2, as recorded in Map Book 6, Page 2, Public Records of Flagler County, Florida, including the sale, lease, option to purchase, development, or subdivision thereof.

Plaintiff Exhibit 5 (emphasis added). As stated in paragraph 4 of the agreement, the

---

2. The receipt executed by the parties provides as follows (as translated):

The undersigned confirms herewith that Mr. Ernst Ammann paid for everything that was done on his property, plus Gulfstar and Regen-

cy Park and William Ihringer received the sum of $95,000.00 (Ninety-five Thousand) Dollars by check for performance like plans, soil tests, permits and option release.
Palm Coast, 8/15/88

parties agreed that this release was to be a complete and final expression of the parties' settlement.

The matter essentially was resolved until Ihringer (and Gulfstar) filed a lawsuit in state court—Case No. 92–467—against Ammann and his company, claiming damages for Ammann's theft of the Sunrise plans, thought by Ihringer to be protected by copyright. Plaintiff Exhibit 9. Other than agreeing that Barry Barnett created the original Sunrise drawings, the parties then, as now, vehemently dispute ownership of the plans and the copyright.[3] *See* Deposition of Barry Barnett at 13. Ihringer contends that he never intended to sell his copyright; Ammann contends that: (1) Ammann paid Ihringer for the drawing; and (2) even if Ihringer owned the copyright, he later purchased his rights for $95,000.00. During trial, Plaintiff's counsel agreed to dismiss count two which claimed Ihringer fraudulently obtained the copyright.

Although the purpose for bringing the second lawsuit was to resolve Ihringer's unyielding claim that he hired Barry Barnett, an artist, to render a "conceptual drawing" of Sunrise and that he alone retained the copyright, Ihringer filed a notice of lis pendens in Flagler County. Ammann objected in 1993 to the notice of lis pendens because he was actively seeking venture capital to finance Sunrise. A notice of lis pendens would all but shatter any ongoing negotiations with potential investors. Following a hearing on Ammann's objection, the Court dissolved the lis pendens in an order entered on March 23, 1993. On March 17, 1993, the day prior to the hearing to dissolve the lis pendens, Ihringer filed a third lawsuit in federal court along with a second notice of lis pendens. By filing such a notice, Ammann's success in

dissolving the lis pendens would be a calamitous victory. One notice would be dissolved; yet a second notice would endure and interfere with Ammann's efforts to obtain capital necessary to complete Sunrise.

The state court resolved the second lawsuit by granting Ammann's motion for summary judgment. Plaintiff Exhibit 11. The state court held a hearing to consider the motion. Plaintiff Exhibit 12. As the transcript reveals, Ammann pressed before the *nisi prius* that the pending lawsuit was barred because Ihringer previously executed a complete release of all claims and causes of action. In addition, Ihringer failed to respond to Ammann's request for admissions served on August 28, 1992. Ammann argued that Ihringer's unanswered admissions were deemed admitted, quoting local rule 1.340(e) for the Fifth District Court of Appeals.[4] As that court properly concluded, Ihringer had admitted that a previous suit was filed on the same matter when he failed to respond to the discovery requests; he was estopped, therefore, from reasserting the same claim.[5]

The federal lawsuit was similarly dismissed for failure to prosecute on October 12, 1993. Plaintiff Exhibit 15. Ihringer was represented by counsel in that action.

Ihringer filed a petition for relief pursuant to Chapter 11 on October 11, 1991, which case was converted to Chapter 7 on June 8, 1993. Plaintiff seeks to except from discharge a money judgment entered in state court on September 10, 1993, in case no. 92–467, for attorney's fees and costs in the amount of $6,765.00, plus interest. *See* 11 U.S.C. § 523(a)(6).

## CONCLUSIONS OF LAW

■ The Bankruptcy Code excepts a debt from discharge if a debt owed is "for willful

---

3. Plaintiff stipulated during trial that the copyright registration was filed with the appropriate office. Defendant Exhibit 2.

4. Ammann also filed a motion to compel discovery, requiring Ihringer to answer interrogatories and a request for production. Ihringer failed to answer and the Court found him to be in contempt. Ihringer failed to comply with the contempt order, too.

5. During trial, Ihringer's counsel argued that the claims were in fact different. While they were

different claims as pleaded, the attorney's fees at issue in this matter were nonetheless awarded because Ammann prevailed on summary judgment. By granting summary judgment and awarding fees, the state court determined that Ihringer filed an unnecessary, successive suit, which Ihringer admitted by operation of law. The Court is bound by that prior determination. It is an altogether different matter whether that second suit filed in 1992 was done maliciously and willfully. The state court made no such finding.

and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). While the terms "willful" and "malicious" ordinarily imply personal hatred, spite, or ill-will, a creditor is not required to prove that a debtor's motive was to harm the creditor. *In re Latch,* 820 F.2d 1163, 1164 n. 4 (11th Cir.1987); *In re Ikner,* 883 F.2d 986 (11th Cir.1989). If a debtor pursues an action that is either "excessive in the absence of spite" or without "just cause" and results in harm, such acts may be characterized as malicious even though there is no proof of specific intent to injure a creditor. *In re Wilson,* 126 B.R. 122, 124 (Bankr. M.D.Fla.1991).

■■■■ Ordinarily, filing a lawsuit would not be considered malicious as that term is defined above. Thus, Ihringer, by simply choosing to contest Ammann's alleged abuse of his claimed copyright, may be considered unyielding or perhaps litigious, but his actions would not be subject to scrutiny, as they are in this matter—to except a debt from discharge because of its underlying *malicious* purpose. Clearly, the law must require something more than a bitter dispute between two former partners who ended a promising business deal in acrimony and who became embroiled in litigation.

Ammann does not seek to recover damages in this action for damages incurred in the federal lawsuit, although Ammann probably would be entitled to damages had he pleaded them. Instead, Ammann seeks to have only the attorney's fees incurred during the second lawsuit to be excepted from discharge. The issue for this Court to consider, then, is whether Ihringer "maliciously" and "willfully" filed the second lawsuit. The Court does not consider, as Plaintiff suggests, a subsequently filed federal lawsuit when determining if a fee award in a prior state lawsuit, alleged to be malicious, should be excepted from discharge. If Ihringer had acted with malice, then his indebtedness to Ammann for attorney's fees and costs will be excepted from discharge. The Code is quite clear that a discharge is a privilege afforded to honest debtors. When a debtor engages in willful and malicious conduct, such as alleged here, a debtor may not avail himself of bankruptcy's "fresh start."

The state court has already determined that the claims raised by Ihringer in the second lawsuit were resolved by the parties' settlement agreement in the first lawsuit. Factually, this finding alone lends support to Ammann's claim that Ihringer acted deliberately and without "just cause" when he filed the second suit. Nevertheless, Ihringer maintains that he owned the copyright as early as 1985, although he did not register it until 1992 and just prior to filing the federal lawsuit. If Ihringer owned the copyright, and it is doubtful that he did, he could have released it, as Ammann claims, upon payment of $95,000.00. Signing and executing the release would negate any justification for filing a subsequent suit. If Ihringer's interest survived, it was resolved nevertheless by the state court on summary judgment. Ihringer has relinquished whatever interest he possessed in the property or stemmed from the property, including his alleged copyright. That much is clear.

From the evidence presented at trial, Ihringer's actions demonstrate a desire to accomplish much more than protecting his alleged copyright; his actions demonstrate a desire to frustrate Ammann from completing Sunrise. Ihringer filed a notice of lis pendens, allegedly on the advice of attorney Gary Bloom. Tim Conner testified—as an expert—that a lis pendens, such as the one filed by Ihringer, lacked any legal justification in a copyright infringement suit. Conner testified that the only conceivable purpose for filing the lis pendens was to either stall the project or to extort money from Ammann. Moreover, Ammann challenged the filing of the notice of lis pendens, and the state court agreed and ordered that the lis pendens be dissolved.

In response, Ihringer offered an unsatisfactory explanation for filing the notice of lis pendens. Ihringer testified that Gary Bloom advised him to file the notice of lis pendens, which advice he claims to have relied upon in good faith. Although this is Ihringer's explanation, the Court finds that Ihringer's testimony is self-serving and credits instead the testimony of Tim Conner. By Florida law—

as recognized in *Royal Trust Bank v. Von Zamft*, 511 So.2d 654 (Fla.App. 3rd DCA 1987)—actions that ordinarily would be treated as legally culpable are excused when one acts in "good faith" upon the advice of counsel. From the evidence presented at trial, it is clear that Ihringer may have subjectively believed that he was true owner of the copyright; but nonetheless, it is clear that Ihringer failed to act in good faith.

Ihringer was not helplessly at the mercy of his attorney, as Ihringer testified. In fact, Ihringer represented himself throughout this litigation (until trial) and did a reasonable job responding to the Court's orders and preparing pretrial memoranda—including a motion for summary judgment. For example, Ihringer submitted a lengthy exhibit and witness list, which consisted of 21 superbly tabbed documents. Also, Ihringer included as an exhibit a letter he wrote to the Honorable Kim Hammond of the Seventh Judicial Circuit. In a letter dated August 3, 1993, Ihringer boasted his knowledge of copyright law, when he wrote:

> In the process of going through some of the papers and filings, I was able to gather, I was amazed how little the Attorneys of all parties know about the Patent, Trademark & Copyright Laws of the United States.
>
> . . . .
>
> By reading the questions on the new action, when one is familiar with thes (sic) laws, one can clearly see a lak (sic) of information and knowledeg (sic) about the Patent, Trademark & Copyright Laws, even so these laws are clearly defined, explicit, short, very interesting to read and fairly easy to comprehend.

Defendant Exhibit JB. Ihringer even mailed a copy of the March 1991 revisions to Judge Hammond. Nonetheless, Ihringer claims to lack any knowledge concerning the possible harm a notice of lis pendens could cause Ammann.

Further, Ihringer explained the reason for filing a second notice of lis pendens in federal court as a coincidence. The notice was filed the day prior to the hearing on a similar notice in state court. He claims that he wanted the state action dismissed so he could proceed with the copyright action in federal court, ostensibly a more likely forum for a copyright infringement action. Ihringer testified he was unaware that on the day prior to the hearing to dissolve the lis pendens, a second notice of lis pendens was filed in the federal lawsuit. The Court does not credit this explanation in light of his previous actions. The more credible explanation, which is contrary to Ihringer's coincidence theory, is that Ihringer attempted to frustrate and extort Ammann's efforts to complete Sunrise.

In sum, the Court concludes that Ihringer settled all claims against Ammann when he executed the release. If any claims survived the release, those claims including Ihringer's alleged copyright infringement claim were foreclosed on summary judgment. While the Court acknowledges that filing a lawsuit does not violate the Code, such filing may be violative, nonetheless, if the debtor's actions are willful and malicious. In this case, Ihringer filed multiple lawsuits challenging more than just Ammann's abuse of his alleged copyright; he used the law improperly to stall the further development of Sunrise. While some may call such actions effective strategy or superior trial tactics, as the public routinely observes in fictional courtroom dramas, the Court considers them to be willful and malicious and an abuse of the legal system.

Enshrined in the Constitution's guarantee of ordered liberty is the right of any citizen to file a lawsuit. If this were the sole issue here, the Court would easily rule in Ihringer's favor. Yet it is not at issue, even tangentially. Ihringer attempted to win his case—not on the merits, but through indecorous maneuvering. While Ihringer's methods may have achieved some measure of success, such methods are of no avail in an equitable proceeding such as bankruptcy. Plaintiff is entitled to be reimbursed for the cost of attorney's fees expended to defend a malicious and willful prosecution.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The relief requested in Plaintiff's complaint, seeking to except from discharge a money judgment entered in state court on

September 10, 1993, for attorney's fees and costs in the amount of $6,765.00, plus interest is **GRANTED.**

2. The Court shall enter a separate final judgment in accordance with these findings.

**DONE AND ORDERED.**