**In re Thomas Mitchell FORBES and Shirley A. Forbes, Debtor.**

**RENTRAK CORPORATION, Plaintiff,**

**v.**

**Thomas Mitchell FORBES and Shirley A. Forbes, Defendants.**

**Bankruptcy No. 94–33631–BKC–PGH. Adv. No. 95–0277–BKC–PGH–A.**

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division.

Sept. 12, 1995.

---

Hans C. Beyer, Stearns, Weaver, Miller Weissler Alhadeff & Sitterson, P.A., Tampa, FL, for Plaintiff.

Charles P. Johnson, Jr., Ft. Lauderdale, FL, for Defendants.

## MEMORANDUM OPINION

PAUL HYMAN, Jr., Bankruptcy Judge.

This matter came before the Court on an objection to discharge of certain debts pursuant to 11 U.S.C. § 523(a)(6). The creditor in this case, Rentrak Corporation ("Rentrak"), seeks to have Thomas Mitchell Forbes and Shirley A. Forbes' (collectively referred to herein as the "Debtors") obligations to Rentrak liquidated. In addition, Rentrak seeks to have the Debtors' obligations deemed nondischargeable under 11 U.S.C. § 523(a)(6) based on the Debtors' failure to remit the proceeds from the sale and rental of certain prerecorded video tapes, and the video tapes belonging to Rentrak ("Rentrak Tapes").

### Findings of Fact

Based on the *Pretrial Order*, the accuracy of which both sides have stipulated, the following facts are undisputed. On November 2, 1994, the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. At all times pertinent to this action, Thomas Forbes was the President and a director of Today's Entertainment, Inc., which conducted business under the name of Video Supermarket ("Today's Entertainment"). Thomas Forbes was also the President and a director of Today's Entertainment II, Inc., which conducted business under the name of Video Supermarket ("Today's Enter-

tainment II"). Shirley Forbes was the Vice President, a director and shareholder of Today's Entertainment and of Today's Entertainment II.

Based on the evidence introduced at Trial, the Court finds that during the time period relevant to this matter, Thomas Forbes was the President and Shirley Forbes was the Vice President, a director and shareholder of Fax–A–Flic, Inc. (Today's Entertainment, Today's Entertainment II and Fax–A–Flic shall be collectively referred to herein as the "Corporations"). The Corporations were in the business of operating video rental stores (the "Stores"). Shirley Forbes was in charge of writing checks and paying the bills for the Corporations. Thomas Forbes provided day to day management for the Corporations. Based on the foregoing, this Court finds that the Debtors were directly in control of the Corporations at all times relevant to this proceeding.

Rentrak provides a sophisticated computer system composed of hardware and software ("Rentrak Computer System") to its customers. The Rentrak Computer System records data for transactions involving all of a customer's video tapes, including the video tapes leased from Rentrak. Rentrak's customers receive periodic invoices based on their orders of new video tapes and other transactions with Rentrak, which are reported electronically to Rentrak through the Rentrak Computer System modem. Rentrak installs these systems and provides training and documentation to its customers regarding the proper use of the Rentrak Computer System. The Corporations received the Rentrak Computer System. Debtors and the Corporations' employees received such training and documentation, and knew, or should have known, how to operate the Rentrak Computer System.

Rentrak routinely enters into agreements with its customers setting forth the mutual responsibilities and duties of the contracting parties. Rentrak entered into such an agreement with each of the Corporations (the "Rentrak Agreements") and Thomas Forbes personally guaranteed each of the Rentrak Agreements. The Rentrak Agreements authorized the Corporations to possess the Rentrak Tapes as lessees subject to certain conditions, which were set forth in the Rentrak Agreements and related documents. One such condition was that the Corporations were required to comply with certain reporting requirements through the Rentrak Computer System.

In addition, the Corporations were permitted to sell the Rentrak Tapes to the public. Such sale, however, was prohibited unless two conditions were fulfilled: (1) a certain amount of time had to pass since the Rentrak Tapes' release and (2) the Corporations could not be in default under the Rentrak Agreements at the time of the sale.

During 1994, the Corporations continued to order and stock Rentrak Tapes. The Corporations were under the direct control of the Debtors from the time of their inception through the dates in which they ceased transacting business. In April, 1994, Rentrak discovered that the Corporations were in default under each of the Rentrak Agreements and that the Corporations had not been transmitting the required data to Rentrak. As a result, on April 26, 1994, Rentrak physically audited each of the Corporations. Rentrak discovered that the Corporations had sold numerous Rentrak Tapes and had failed to report these sales to Rentrak, as required by the Rentrak Agreements. Rentrak subsequently terminated the Rentrak Agreements with each of the Corporations. Pursuant to the terms of the Rentrak Agreements, Rentrak demanded the return of all Rentrak Tapes from each Corporation through three letters sent by certified mail to Thomas Forbes as an officer of the Corporations. These letters also demanded the payment of certain funds to Rentrak due under the Rentrak Agreements.

The Debtors closed each of the Stores following the Rentrak audits. Rentrak, however, was not notified of any of the Stores' closings, as required by the Rentrak Agreements. The Debtors have admitted that at the time of the Stores' closings, each of the Corporations was behind in its payments to Rentrak. Additionally, despite Rentrak's demands that the Rentrak Tapes be returned, the Corporations did not return any of the Rentrak Tapes. Rentrak received no infor-

mation from the Debtors regarding the fate of the Rentrak Tapes nor any of the proceeds generated from their sale. None of the funds the Corporations and Thomas Forbes owed to Rentrak at the time of the Stores' closings have been received. After receiving two of Rentrak's demand letters, and after sufficient time had passed so that Thomas Forbes should have been received the third demand letter, the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

The Debtors testified at their first meeting of creditors that they sold the Rentrak tapes to the public prior to the Stores' closings. The Debtors have not accounted for the proceeds of these sales. However, in a subsequent deposition on June 6, 1995 and at trial, Thomas Forbes stated that the Rentrak Tapes had been taken from his control when the landlords for the three Stores locked the Debtors out for monetary defaults under each of the three leases. In addition, Thomas Forbes stated that these landlords had taken control of the Rentrak Tapes. Representatives of two of the three landlords of the Stores contradicted Thomas Forbes' June 6, 1995 deposition testimony.

Based on the sworn testimony and after observing the demeanor of the witnesses, and upon review of the documentary evidence offered at trial, this Court makes the following finds of fact. The Debtors were not permanently locked out of the Stores. The Debtors left at least two of the three Store locations voluntarily without notifying the landlords and without returning the keys to the leased premises. The Debtors conducted at least one "special sale" of the Rentrak tapes immediately prior to leaving one of the Stores. Additionally, the Debtors made no effort to return the Rentrak tapes remaining at the Stores after the Corporations' default under the Rentrak Agreements.

This Court specifically finds the deposition testimony of Thomas Forbes as it pertains to the actions of the three landlords in locking Debtors out of the Stores and the fate of the Rentrak Tapes to be unreliable and not credible in the face of contravening evidence presented at trial. Furthermore, this Court finds that Debtors sold the Rentrak Tapes and converted the proceeds of these sales to their own benefit and use without authorization or excuse for either the sale of the Rentrak Tapes or the exercise of ownership over the proceeds of these sales.

### Conclusions of Law

There is no dispute that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This adversary proceeding represents a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Since this is a core proceeding, this Court has jurisdiction to adjudge the validity and amount of Rentrak's claim against the Debtors, as well as that claim's dischargeability. *In re McLaren*, 3 F.3d 958, 965 (6th Cir.1993); *Matter of Hallahan*, 936 F.2d 1496, 1508 (7th Cir.1991); *In re Davis*, 155 B.R. 123, 134 (Bankr.E.D.Va.1993).

The outcome of this case turns upon whether the Debtors' actions in failing to remit the proceeds from the sale or other unauthorized disposition of the Rentrak Tapes were "willful" and "malicious" as that term is used in §§ 523(a)(6) of the Bankruptcy Code. This Court finds the Debtors' explanation that the disappearance of nearly 2,000 video tapes was a result of either theft, inadvertent destruction, actions by various landlords, or other unspecified loss to be contradictory and not credible.

By selling and otherwise disposing of the Rentrak Tapes, each of the Corporations exercised ownership over goods belonging to Plaintiff without Plaintiff's authorization. The Corporations' exercise of ownership was to the exclusion of Plaintiff's rights in the Rentrak Tapes, including Rentrak's security interest in the Rentrak Tapes. These Corporations' acts constitute conversion of the Rentrak Tapes. *In re Wolfson*, 56 F.3d 52, 53 (11th Cir.1995); *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559 (11th Cir.1987); *In re Bullington*, 167 B.R. 157, 162 (Bankr. W.D.Mo.1994); *Belford Trucking Co. v. Zagar*, 243 So.2d 646 (Fla. 4th D.C.A.1970).

Similarly, by selling and otherwise disposing of the Rentrak Tapes in which Plaintiff had legal interests, including Plaintiff's security interest, each of the Corporations exer-

cised ownership over and sold or otherwise disposed of Plaintiff's goods. The Corporations' sale and disposition of the Rentrak tapes were without the authorization of Plaintiff and without the remittance of the proceeds to Plaintiff. The Corporations' actions were taken to the exclusion of Plaintiff's legal rights in the Rentrak Tapes and, therefore, constitute sales out-of-trust of the Rentrak Tapes. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988); *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556, 1557; *Transamerica Commercial Finance Corporation v. James,* 152 B.R. 994, 995 (M.D.Fla.1992).

■ Officers, directors, and shareholders are not generally personally liable for liabilities incurred by corporations in which they have an interest. However, when corporate liability arises from a corporation's unauthorized sale of inventory in which another party has a legal interest, and when an officer, director, or shareholder of that corporation directed or participated actively in such tortious action, it is well settled that an insider will be held personally liable for all liabilities arising from the tortious actions of the corporation. *In re Duncan,* 162 B.R. 905, 910 (Bankr.M.D.Fla.1993) (decided on similar facts to those in case at bar); *Takeuchi Mfg., Ltd. v. Fields,* 44 B.R. 322, 327 (Bankr.S.D.Fla.1984); *McMillan v. Firestone,* 26 B.R. 706, 714 (Bankr.S.D.Fla.1982).

■ It is undisputed that Thomas M. Forbes was in direct control of the operations of each of the Corporations. Thomas M. Forbes is therefore personally liable for the Corporations' unauthorized actions with respect to the Rentrak Tapes. *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556, 1559; *In re Black,* 179 B.R. 509, 516 (Bankr.E.D.Tex. 1995). Furthermore, the Debtors decided together which of the Corporations' bills, including those of Rentrak, would be paid and Shirley A. Forbes handled the book-keeping for the Corporations. This degree of involvement in the affairs of the Corporations relating to the Rentrak Tapes is sufficient to impose personal liability upon both Debtors. *Transamerica Commercial Finance Corporation v. James,* 152 B.R. 994, 995; *In re*

*James,* 124 B.R. 614, 616 (Bankr.M.D.Fla. 1991).

■ Section 523(a)(6) of the Bankruptcy Code provides that a bankruptcy discharge will not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In the context of the § 523(a)(6) exception to discharge, the Eleventh Circuit Court of Appeals has held that "willful" means intentional or deliberate and that "malice" can be established by a finding of implied or constructive malice; a showing of a specific intent to harm another is not required. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263; *In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989).

Bankruptcy Courts interpreting the Eleventh Circuit's opinions on this issue have found that a creditor bringing an action under § 523(a)(6) of the Bankruptcy Code is not required to prove that a debtor's motive was to harm the creditor or that creditor's interest in property to prevail under the willful and malicious requirement. *Tricentrol Overseas, Ltd. et al. v. Gale H. Touchstone (In the Matter of Gale H. Touchstone),* 149 B.R. 721, 726 (Bankr.S.D.Fla.1993) (constructive or implied malice is sufficient to satisfy the malice requirement of 11 U.S.C. § 523(a)(6)); *Walter Ray Seay v. Shari A. Greene (In re Shari A. Greene),* 150 B.R. 282 (Bankr.S.D.Fla.1993).

In addition, Bankruptcy courts have found that a debtor, who sells property in which a creditor has a security interest, cannot subsequently claim innocence or lack of willfulness and malice when that debtor knew or should have known that it was not authorized to sell the property and that the sale of the property would destroy the creditor's security interest. *In re Thomas,* 116 B.R. 287, 290 (Bankr.M.D.Fla.1990). Bankruptcy courts have also held that a debtor's intentional act which causes harm may be characterized as willful and malicious for purposes of § 523(a)(6) of the Bankruptcy Code despite the fact that no intent to harm the creditor can be shown. *In re Touchstone,* 149 B.R. 721, 726 (Bankr.S.D.Fla.1993); *In re Collins,* 151 B.R. 967, 970 (Bankr.M.D.Fla.1993); *In re*

*re Wilson,* 126 B.R. 122, 124 (Bankr.M.D.Fla.1991).

Taking into account the totality of the Corporations' and Debtors' actions toward Rentrak, this Court concludes that the Debtors' conversion of the Rentrak Tapes and the proceeds from the unauthorized sale or disposition of the Rentrak Tapes was both willful and malicious for purposes of § 523(a)(6) of the Bankruptcy Code, as those terms have been defined by the Eleventh Circuit Court of Appeals. Therefore, the Debtors' obligations to Rentrak are nondischargeable.

Finally, there remains the question of the amount of Rentrak's claim against the Debtor. Rentrak introduced evidence that the amount of damages suffered by Rentrak as a result of the Debtors' breach of their contractual obligations equals the sum of $118,815.08, which represents the following: (1) the full current retail price of the collateral; (2) the revenue sharing proceeds owed to Rentrak at the time the Stores closed; and (3) Rentrak's lost revenue resulting from Debtor's failure to transmit information regarding the rental of the Rentrak Tapes in the Debtor's possession prior to the Stores' closing. The Court finds that Rentrak is entitled to an award of damages equal to the actual damage suffered as a direct result of the Debtors' breach. The Court finds that the proper measure of such award is the $118,815.08 sought by Rentrak.

In addition, Rentrak seeks an award for punitive damages to discourage the Debtors, and other similarly situated potential debtors, from engaging in willful and malicious conduct on the eve of bankruptcy filing. However, this Court finds insufficient grounds to award punitive damages in this case. This Court, having reviewed the record, shall grant Rentrak a judgment in the amount of $118,815.08. In this Court's opinion, $118,815.08 represents a reasonable award in light of the facts of this case. This Judgment shall bear interest at the applicable Federal Judgment rate of interest from the date of its entry.

A separate Order reflecting this Court's findings on nondischargeability and awarding Rentrak a judgment in the aforementioned amount shall be entered with this Memorandum Opinion.

### *JUDGMENT*

Consistent with the Findings of Fact and Conclusions of Law set forth in the attached Memorandum Opinion,

IT IS ORDERED and ADJUDGED that Rentrak Corporation be, and hereby is, granted a judgment in the amount of $118,815.08 against Thomas Mitchell Forbes and Shirley A. Forbes and that said judgment is nondischargeable under the provisions of 11 U.S.C. § 523(a)(6).

This is a final and appealable order.

DONE AND ORDERED.